HERMAN HOLT, APPELLANT, V. EILERT SCHNEIDER,
APPELLEE.

FILED JANUARY 19, 1899.  No. 8646.

1. **Principal and Agent:** ESTOPPEL OF PRINCIPAL. Where a principal
   has by his voluntary act placed an agent in such a situation
   that a person of ordinary prudence conversant with business
   usages and the nature of the particular business is justified in
   presuming that such agent has authority to perform a particular
   act, and therefore deals with the agent, the principal is estopped
   as against such third person from denying the agent's authority.

2. ———: APPARENT AUTHORITY: QUESTION OF FACT. Whether or not
   an act is within the scope of an agent's apparent authority is to

be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business. *Johnston v. Milwaukee & Wyoming Investment Co.*, 46 Neb. 480, followed.

3. ————: OSTENSIBLE AUTHORITY: EVIDENCE. Ostensible authority to act as agent may be inferred if the party to be charged as principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency. *Thomson v. Shelton*, 49 Neb. 644, and *Phœnix Ins. Co. v. Walter*, 51 Neb. 182, followed. *Porter v. Ourada*, 51 Neb. 510, and *Frey v. Curtis*, 52 Neb. 406, distinguished.

4. ————: AUTHORITY OF AGENT: PAYMENT BY NOTE. Generally, the authority of an agent or attorney to collect his principal's debt does not include the authority to accept as payment anything but money; and where a debtor gives his own note to the agent, it will not discharge the debt due the principal, in the absence of ratification of such payment by him.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J. *Reversed.*

*C. C. Flansburg,* for appellant.

*Stevens & Cochran,* contra.

RAGAN, C.

Herman Holt brought this suit in the district court of Lancaster county against Eilert Schneider and others to foreclose a real estate mortgage executed by Schneider to Holt in February, 1884, to secure a note of Schneider of that date payable to Holt for $3,200, due January 1, 1889, with eight per cent interest per annum from its date. As a defense to the action Schneider pleaded payment. The court found the issues in his favor and dismissed Holt's action, and he has appealed.

1. The history of the case is as follows: From 1882 until this controversy arose C. C. Burr, at Lincoln, Nebraska, was engaged in the business of negotiating real estate loans, and until this time Herman Holt was a capitalist residing in New Hampshire. About the year 1882 Burr began lending money to borrowers, taking their notes secured by mortgage payable to Holt. Burr

would give his own check to the borrower for the amount of the loan, record the mortgage, and transmit the papers evidencing the loan to Holt, and draw on him for the amount of the mortgage loan. This course of business was in pursuance of an agreement between Burr and Holt that the latter would take about $20,000 of such loans. The payment of all the loans so made for Holt by Burr in pursuance of this arrangement were guarantied by the latter. The applications for loans were made to Burr. He examined, or caused to be examined, the borrower's title, passed upon its validity, and determined its value as security. He collected interest on the Holt loans from time to time as they matured, and from time to time sent Holt statements of the interest he had collected, and sent him drafts for such interest, deducting any charges made for his services in collecting this interest. In some instances Burr also collected the principal of loans, which he likewise remitted to Holt in the statements made to him from time to time of collections in his hands. Holt sent to Burr from time to time coupons that were due for collection, and when these coupons were received by Burr and paid, he would turn them over to the borrower. Sometimes Burr remitted the interest due before it was actually paid to him. Sometimes the borrower would pay his interest to Burr before Burr received the coupon. In no instance did Holt ever notify any of his debtors to remit the principal or interest of their loans to him, nor did he notify them to pay their loans to Burr. In fact, he had no communication at any time with any of the persons who had borrowed his money, except in one or two instances borrowers wrote him asking, that if they would remit him the amount due on their loans, would he release the mortgages; and in such instances he answered, saying, that he would first communicate with Burr and ascertain if Burr had in his possession any coupon which he, Burr, had paid but which had not been paid to him. Burr also caused in some instances the mortgaged property to be insured for

the benefit of Holt, and generally he transacted the entire business in reference to the making and collection of these loans on behalf of Holt. In 1884 Schneider made application to Burr for a loan of $3,200. Schneider executed to Holt the note and mortgage in suit. Burr caused this mortgage to be recorded and forwarded the same, together with the bond which it secured, to Holt and drew his draft on Holt for $3,200, which Holt paid. When the annual interest coupons matured in January, 1885, 1886, and 1887, Schneider paid them to Burr and he remitted the amounts to Holt. He made these remittances, not exactly at the time they were paid, but according to the usual method adopted by him and Holt for the transaction of their business. It seems that when money was collected by Burr he placed it to his own credit in the bank until such time as he was ready to make a statement to Holt, and when he made such statement he would charge himself with all the moneys he had collected since his former statement, and credit himself with his charges and expenses for making the collections. Holt sent the Schneider coupons to Burr in the same manner that he sent the coupons of other borrowers, and they were by Burr turned over to Schneider. At the time Burr made this loan to Schneider he took from the latter a note for $320, secured by a second mortgage upon the same real estate mortgaged to Holt. This was Burr's commission charged Schneider for obtaining for him the loan. It seems that Burr, because of his guaranty, advanced and paid to Holt the Schneider coupon which matured January 1, 1888; and that coupon not having been paid by Schneider to Burr and Burr's commission mortgage remaining unpaid, he brought a suit in April of that year in the district court of Lancaster county against Schneider to foreclose the commission mortgage. To this suit Schneider and his wife were made parties and duly served with process of the court. Burr also made Herman Holt a party to this suit and employed a firm of attorneys for Holt. The attorneys

filed a cross-bill for Holt, in which the execution of the principal note and mortgage was alleged; that Schneider had made default in paying the interest due thereon, by reason whereof Holt had elected to and had declared the entire mortgage debt due. This case went to decree, Holt, being awarded a first lien for the principal of his mortgage and the interest thereon and Burr a second lien. Holt had not expressly authorized Burr to bring this foreclosure suit. He had no knowledge that it had been brought until October, 1894. At the time the suit was brought, and at all times until this decree was rendered, the Schneider mortgage was in Holt's possession, and at the time the decree was rendered on Holt's cross-bill in the Burr suit the mortgage had not by its terms matured. Schneider took a stay of execution of this decree, and before the stay expired procured a loan of money from the Lombard Investment Company and secured it by mortgage upon the real estate in controversy and paid the proceeds of this loan, about $3,800, over to Burr. This sum was not sufficient to discharge all liens awarded against the land by the decree rendered in the Burr case. Presumably to enable Schneider to procure the loan from the loan company, Burr released his own lien against the Schneider land and procured the release of all other liens against the same, and also as the agent and attorney of Holt released the decree which the court had awarded Holt against that land and took from Schneider his note secured by chattel mortgage for the difference between the sum of $3,800 paid him by Schneider and what it took to clear said real estate from all the liens awarded by the decree in the Burr case. Burr did not account and pay over to Holt all, if any part, of the money paid to him by Schneider to apply on the Holt mortgage. In October, 1894, Holt visited Lincoln and for the first time learned that Burr, assuming to act as his agent, had foreclosed the Schneider mortgage and received from Schneider the money already referred to. After a somewhat complete examination into this

Schneider affair, after consultation with Burr, and with
a full knowledge of everything that Burr had done in
reference to this Schneider loan, Holt took an assign-
ment in writing from Burr of a large number of certifi-
cates of stock owned by the latter in certain corpora-
tions, the face or par value of this stock being something
more than $200,000. The agreement recites that this
assignment was made to Holt for three purposes: (1)
That Holt should apply the proceeds of the stock to re-
pay himself for any money he might pay out to redeem
the stock which was then pledged as collateral security;
(2) the proceeds should be applied to the payment of
a note of $5,000 held by Elizabeth Holt against Burr;
and (3) the excess of the proceeds of the stock was to be
applied by Holt "in fulfillment, satisfaction, or discharge
of any of my contracts with said Herman Holt, wherein
I guaranty the payment of any notes to him." The evi-
dence also tends to show that this assignment of stock
was made and received with the intention on the part of
the parties thereto not only to secure the payment of all
the notes which Burr had guarantied to Holt and which
notes had not been paid, but that it was the intention of
the parties by this assignment of stock to secure to Holt
the payment of the Schneider loan which Burr had col-
lected and not accounted for.

2. From this evidence the district court was of opinion
(1) that Burr was the general agent of Holt, clothed with
authority to collect any mortgage loan which he had ne-
gotiated for Holt and of which he had guarantied the
payment; (2) that Schneider was justified in believing
and acting upon the supposition that Burr was Holt's
agent for the collection of Schneider's mortgage debt,
and that the latter was justified in believing that Burr
had authority to bring suit in Holt's name, declaring the
mortgage due and foreclosing the same, and justified in
relying upon the release of the decree made by Burr; and
(3) that Holt took from Burr the assignment to secure,
among others, the payment of the money which Schnei-

der had paid to Burr and which the latter had not turned over to his principal, and that Holt took this assignment with a full knowledge of everything his agent had done in the premises, and had therefore ratified all the acts of Burr, even if they were unauthorized.

3. We do not think the district court was correct in its conclusion that Burr was the general managing agent of Holt, and the latter therefore bound by all that he did; nor do we think the district court was correct in holding that Holt had ratified the action of Burr, if unauthorized, by taking from the latter the assignment referred to. But we think, and we decide, that Holt, by his conduct, led Schneider to believe that Burr was the former's agent, clothed with full authority to collect the debt which Schneider owed Holt. As already stated, Holt, though holding Schneider's mortgage, bond, and coupons, had at no time any communication or correspondence with him, and did not direct him at any time to make his remittances to him, Holt. Holt does not seem to have relied so much upon Schneider's mortgage to secure the debt as he did upon Burr's guaranty of the payment thereof. When Schneider's coupons would mature, if he paid them, he would pay them to Burr, through whom he negotiated the loan, and in due course of time Burr would return him the coupon he had paid. All this time Holt knew positively that Burr was collecting his interest on the Schneider loan. He did not disprove of that. He did not question Burr's authority to make these collections in any manner whatever. The mortgage provided that in case default should be made in the payment of interest due thereon for five days, then the mortgage, at the election of the holder of the mortgage debt, should become due. When Schneider was summoned into court to answer the cross-bill filed therein by Burr for Holt that cross-bill set out the fact that Schneider had made default in the payment of the annual interest due on his loan, and that by reason thereof Holt had elected to declare the whole mortgage

debt due. Now while Holt himself did not file this cross-bill, while he did not expressly authorize Burr to file it, yet Burr, assuming to act as his agent, filed, or caused to be filed, the cross-bill, and Schneider was guilty of no negligence in not inquiring into the authority of Burr to cause this cross-bill to be filed. He had the right to presume from what he already knew of Burr and Holt's method of conducting business that since his mortgage was in default Burr had the authority to collect it, and if authority to collect it, had a right to declare it due, and to bring a suit to foreclose it.

It is true that the note and mortgage were not filed in court at the time this decree was taken; and it is also true that the district court should not have permitted this decree to be taken except upon the filing and cancellation of this note and mortgage. But Schneider was not guilty of negligence in not seeing that this was done or not done. When he was about to pay over to Burr the proceeds of the new loan which he had made upon his farm to discharge this Holt indebtedness he inquired for the note and mortgage, and was answered that they could not be given to him because they were part of the files of the court. This satisfied him, and under the circumstances he was not guilty of negligence in paying the money without the production of the note and mortgage.

This case falls within the doctrine of *Johnston v. Milwaukee & Wyoming Investment Co.*, 46 Neb. 480, in which it was ruled: "Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority." And in the case cited it was further ruled: "Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all

the circumstances of the transaction and the business."
The case at bar is also within the doctrine of *Thomson
v. Shelton*, 49 Neb. 644, where it was said: "Ostensible
authority to act as agent may be conferred if the party
to be charged as principal affirmatively or intentionally,
or by lack of ordinary care, causes or allows third per-
sons to trust and act upon such apparent agency." To
the same effect is *Phœnix Ins. Co. of Hartford v. Walter*,
51 Neb. 182. The case at bar is distinguishable from
*Porter v. Ourada*, 51 Neb. 510. In that case the mort-
gagor voluntarily paid to the original mortgagee the full
amount of the mortgage debt before its maturity, the
mortgagee not being in possession of the evidence of the
debt, and it was held that such a payment would not dis-
charge the debt, it being evidenced by a negotiable prom-
issory note not then due and in the hands of an innocent
holder. In that case the mortgagor had made payments
of interest to the mortgagee, but the mortgagee was not
the agent of the holder of the negotiable paper, and the
latter did not know that these payments were made by
the mortgagor to the mortgagee. In the case at bar Holt
knew all the while that Schneider was paying his in-
terest as it matured to Burr for him, Holt. He recog-
nized and approved these payments and thereby justified
Schneider in believing that Burr had authority to collect
for Holt. In the case at bar, at the time Schneider paid
the $3,800 to Burr, he supposed, and had the right to sup-
pose, that Burr, as Holt's agent for the purpose of col-
lecting it, had declared the entire mortgage debt due;
and the payment made by Schneider under the circum-
stances was not a voluntary payment, but one made *in
invitum*. (*Green v. Hall*, 43 Neb. 275.) The case at bar is
also distinguishable from *Frey v. Curtis*, 52 Neb. 406. In
that case a mortgagor voluntarily paid to the agent,
through whom he had negotiated it, a mortgage loan be-
fore its maturity, the loan being evidenced by a negotia-
ble promissory note, and at the time in the hands of an
innocent third party, and it was held that the mortgagor

was not protected by reason of the payment made. In the *Frey Case*, as in the *Ourada Case*, the holder of the mortgage debt had no notice or knowledge that the mortgagor had ever paid any of his interest coupons to the agent through whom the loan was negotiated. In the case at bar one of two innocent persons must suffer,—either Holt or Schneider. In equity who should bear this loss? Certainly not the one without fault. The one whose negligence caused the loss. If Holt, knowing that Schneider was paying his interest coupons to Burr, had communicated with Schneider and directed him to make his interest payments on his loan directly to him, Holt, then, if Schneider had paid or attempted to pay through Burr, he would not have been protected; but Holt did not do this, did not deal with Schneider in any respect, but permitted Burr to collect what Schneider owed him; allowed Burr to place it to his own credit, and from time to time account to him, Holt, for it with other collections made. Schneider knew that Burr was collecting his interest for Holt and remitting it, and he was justified, from what he knew of the course of dealing between Burr and Holt, in regarding the former as the latter's agent for the purpose of collecting the entire mortgage debt.

As already stated, Schneider obtained the $3,800 paid to Burr by means of a loan from the Lombard Investment Company, and secured the payment of this loan by a mortgage upon the land in controversy. When the investment company's loan matured, Schneider borrowed money from the Union Central Life Insurance Company, with which he paid off and discharged the investment company's mortgage, and secured the life insurance company's loan by another mortgage upon this land. The loan of the life insurance company remains unpaid. The insurance company was made a party to this action and filed an answer in the nature of a cross-bill, seeking to foreclose its mortgage. Although under the circumstances disclosed by the evidence in this record it must be

held that Schneider was justified in regarding Burr as Holt's agent clothed with authority to collect the debt which Schneider owed Holt, yet Burr had no authority, either actual or ostensible, to make collections of Holt's debt in anything but money. Schneider could not discharge his debt to Holt by giving his own note secured by chattel mortgage to Burr. (*Cram v. Sickel*, 51 Neb. 828.) If Burr was Holt's agent with authority to collect the Schneider mortgage, he was not his agent to accept from Schneider in payment of that mortgage anything but money; and though Schneider was justified in regarding Burr as Holt's agent to receive payment of his debt, he was not justified in believing that Burr had authority to accept anything other than money in satisfaction of his principal's claim. Schneider, therefore, has paid to Holt only $3,800 of what was due the latter at the time such payment was made. Schneider, therefore, is entitled to be credited on the Holt mortgage loan with $3,800 as of the date when he made the payment of that sum to Burr, and he is still indebted to Holt for the difference between that sum and the amount due on the Holt mortgage when the $3,800 were paid. But the real estate in controversy is now incumbered by a mortgage made by Schneider to the Union Central Life Insurance Company, and under the evidence in this record the insurance company is an innocent mortgagee or purchaser of this real estate, and its mortgage lien thereon is superior to any lien which Holt may have upon the real estate to secure the payment of the balance due him from Schneider.

The decree of the district court will be reversed and the cause remanded, not for a retrial, but with instructions to ascertain the amount due to Holt from Schneider after deducting the $3,800 paid by the latter to Burr, and to award Holt a lien upon the real estate in controversy for the payment thereof, postponing such lien, however, to that of the Union Central Life Insurance Company.

REVERSED AND REMANDED.