Walker v. Hale.

---

HIRAM P. WALKER, APPELLANT, V. DAVID W. HALE ET AL.,
APPELLEES.

FILED JANUARY 16, 1913.   No. 16,902.

1. **Witnesses:** COMPETENCY: PRINCIPAL AND AGENT. The fact that an
   agent of a party to an action is deceased at the time of the trial
   does not render the other party an incompetent witness by whom
   to prove a transaction with such agent during his lifetime and
   while engaged in the business of his principal.

2. **Payment:** AUTHORITY OF AGENT. "Where one has placed his agent
   for the investment of money in notes and mortgages in such a
   situation that persons of ordinary prudence, acquainted with busi-
   ness usages, would be justified in regarding such agent as having
   full authority with reference to the extension, collection, etc., of
   such notes and mortgages, payment to such agent will be deemed
   payment to the principal." *Harrison Nat. Bank v. Austin*, 65 Neb.
   632.

3. **Principal and Agent:** AUTHORITY OF AGENT. Whether or not an act
   is within the scope of an agent's apparent authority is to be deter-
   mined as a question of fact from all the circumstances of the
   transaction and the business.

4. Evidence examined and set out in the opinion, *held*, amply sufficient to sustain the findings and judgment of the district court.

APPEAL from the district court for Clay county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Ambrose C. Epperson,* for appellant.

*S. W. Christy* and *L. E. Cottle, contra.*

FAWCETT, J.

Plaintiff brought suit in the district court for Clay county, to foreclose a mortgage upon lots 8 and 9, in block 12, in the original town of Ong, in said county. From a decree finding that the note, which the mortgage was given to secure, had been paid and dismissing plaintiff's suit, plaintiff appeals.

The petition is in the usual form. It alleges the execution of the note and mortgage by defendants David W. Hale and wife; the subsequent sale of the premises by the Hales to one McCrain, who conveyed to one Nearhood, who conveyed to one Arthur B. Smock; that the Exchange Bank of Ong is the record holder of a mortgage given to it by defendant Smock. Smock and his wife and the bank were made defendants. The bank answered separately, setting up its mortgage from Smock, and prayed that, in case a decree of foreclosure is entered in favor of plaintiff, its mortgage should be taken into account. The defendants Smock answered, alleging ownership of the premises by defendant Arthur B. Smock; that he purchased the same subject to two mortgages from his grantor Nearhood to the defendant bank. Further answering, it is alleged that, at the time the note and mortgage set out in plaintiff's petition were given by the defendants Hale, J. O. Walker of Ong represented the plaintiff in the taking of said note and mortgage, and thereafter continued to represent plaintiff in the collection of the interest, and was authorized by plaintiff to

collect and receive the principal of said note; that on or about the first day of June, 1905, defendant David W. Hale paid to J. O. Walker $300 upon the principal of the note; that after the payment of the $300 defendants Hale sold the land to John M. McCrain, subject to $300 remaining unpaid of the principal; that on or about the 6th day of February, 1907, McCrain paid the plaintiff the $300 and interest to the date of said payment, being the balance of the debt represented by the note, "said payment being made at the town of Ong, Clay county, Nebraska, to J. O. Walker, the representative of the plaintiff and the person who made said loan and who had collected all the interest thereon up to said date;" that defendants purchased the premises January 1, 1908, went into possession thereof, have occupied the same to the time of filing the answer, and that they have never had any notice of the alleged claim of plaintiff until the bringing of this suit; "neither have they paid anything on the principal or interest of said alleged claim;" that the said J. O. Walker, to whom Hale and McCrain paid the debt, was representing the plaintiff at Ong, Nebraska, in the loaning of money, in the collection of the principal and interest on said loans and remitting same to the plaintiff, and that in the taking of the notes sued on and the mortgage given to secure the same, and in the collection of the principal and interest, the said J. O. Walker was the agent and representative of the plaintiff and had authority to receive the money so paid to him thereon in payment, satisfaction, and discharge of the indebtedness represented by said note; denied all other allegations in the petition; and prayed for a decree that the indebtedness represented by the note and mortgage had been fully paid by the payment to J. O. Walker, who was authorized by plaintiff to collect and receive the same in discharge of said debt, and that the premises described in plaintiff's petition be released and discharged from any lien under and by virtue of plaintiff's mortgage; that the mortgage be canceled of record, and for general relief. The reply

to the answer of defendant Smock is a general denial. Defendants Hale answered that the making of said loan and all other transactions in connection therewith were had and done with J. O. Walker, who acted for and represented plaintiff in connection therewith; that all interest payments made by the defendants for the years 1901 to 1905, inclusive, were made to J. O. Walker; allege the payment of $300 of the principal, as alleged in the answer of defendant Smock, and the sale of the premises to McCrain subject to the remaining $300, which McCrain assumed and agreed to pay. The trial court found that, at the times and dates alleged in plaintiff's petition and the answer of Arthur B. Smock and Carrie Smock, J. O. Walker was the agent of the plaintiff at Ong, Nebraska, and as such agent was authorized to make loans, collect principal and interest thereon, cancel the notes and enter satisfaction of mortgages; "that the note and mortgage and the principal debt and the interest thereon were paid to J. O. Walker as alleged in the answer of Arthur B. and Carrie Smock, and is a complete satisfaction and discharge of said debt, and said defendants are entitled to have the mortgage canceled of record," and entered a decree in accordance with such findings.

J. O. Walker was plaintiff's nephew, and cashier of the Exchange Bank of Ong, of which his father, plaintiff's brother, was president. It appears from the evidence that J. O. Walker was the active manager of the bank and had the unlimited confidence of everybody in Ong and surrounding country. He died on or about December 17, 1908, and it was then discovered that through his skilfully manipulated and systematic dishonesty a large number of persons, among them some of his most trusting relatives and friends, were defrauded out of large sums of money, aggregating many thousands of dollars. One of his victims, whom he had deceived for many years, and who must now suffer the loss of a large sum of money by reason of the confidence which he placed in his nephew, is the plaintiff in this case. J. O. Walker seems to have

been no respector of persons. His uncle, with his thousands, and the poor man borrowing a few hundred dollars, alike became his victims.

The first point urged by plaintiff for a reversal is that, "if J. O. Walker was the agent and representative of the plaintiff and he in fact received and failed to remit to the plaintiff the moneys alleged to have been paid him, then upon his death the plaintiff would become his legal representative," and that the testimony of Hale and McCrain as to conversations and transactions with J. O. Walker, who is deceased, is barred under section 329 of the code, which provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation, or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation." No time need be spent upon this contention for three reasons: (1) The plaintiff is not the representative of the deceased. The deceased in his lifetime was the representative of plaintiff. (2) Plaintiff himself testified to his correspondence and dealings with J. O. Walker in reference to business generally and the note and mortgage in suit in particular. (3) The point is decided adversely to plaintiff's contention in *German Ins. Co. v. Frederick*, 57 Neb. 538, where we said: "Objection is made to the introduction of evidence as to the transactions of the insured with the agent, on the ground that the agent was dead at the time of trial. This fact seems to have been assumed, but it was not proved. However, the statute makes such testimony incompetent only where the adverse party is the representative of the deceased. Here that was not the case. The deceased in his lifetime had been the representative

of the adverse party. Perhaps such cases ought to be
brought within the statute, but they are not now within
it."

That payment of the full amount of the debt represented
by the note and mortgage in suit was made to J. O.
Walker is not disputed. The only question therefore to
be determined in this case is, was J. O. Walker, at the
time the payments were made to him, the general agent
of the plaintiff, at Ong, for the purpose of receiving such
payments, and were Hale and McCrain justified, at the
time they made the payments to him, in believing that he
was such general agent?

It is argued that this mortgage was given directly to
plaintiff; that it was negotiated through J. O. Walker;
that for a number of years, and during the times in con-
troversy, J. O. Walker was cashier of the Exchange Bank,
and that the fact, if it is established, that J. O. Walker
acted for plaintiff in placing the loan and in the collec-
tion of the interest would be insufficient proof of his
agency to collect the principal. It is contended generally
that the relation of principal and agent between plaintiff
and J. O. Walker did not exist; that they were doing
business at arm's length; that they were engaged in the
purchase and selling of securities, and at the same time
J. O. Walker, as cashier of the bank, was interested in
furnishing money to the customers of the bank, and that
he was availing himself and his customers of the plain-
tiff's funds for these purposes; that plaintiff testified that
he and J. O. Walker did not always pull together; that
plaintiff returned papers sometimes that did not suit
him; that J. O. Walker did not have entire control of the
papers; that plaintiff did not permit him to do as he
pleased; that authority was given with reference to each
particular matter as it arose and no general authority
was given; that "plaintiff did not know that J. O. Walker
was conducting matters in a criminal way until after the
transactions important to this case had occurred." The
evidence shows that plaintiff made over 100 loans through

J. O. Walker. Sixty-five of the loans were taken in the name of plaintiff direct, while 39 were, as shown by plaintiff's statement from his books, taken in the name of J. O. Walker "for the use of plaintiff;" that, with reference to the latter class of loans, J. O. Walker would write to plaintiff telling him of the loans and the security, and asking if plaintiff desired it; that if approved, and only when approved, would plaintiff make the investment. It is also urged that plaintiff was not dealing with J. O. Walker individually, but in his official capacity as cashier of the bank, and that the bank was the agent through which plaintiff was making his Nebraska loans. We are a little at a loss to see how that fact, if it were a fact, could militate in favor of plaintiff, for, if the bank was his agent and J. O. Walker, who was the cashier and managing officer of the bank, did the things complained of, in his capacity as cashier, still the defendants would have the same right to rely upon him in that capacity as they would if he were acting individually. However that may be, the overwhelming weight of the evidence clearly shows that plaintiff was not transacting his business with the bank, nor with J. O. Walker as cashier. A large number of letters written by plaintiff to J. O. Walker were introduced in evidence, and it was stipulated and agreed that plaintiff wrote him at least a total of 200 letters of like tenor during the years that plaintiff was transacting business through him. Without a single exception, those letters were addressed to J. O. Walker as "Dear Nephew." In not a single instance, in reference to the large number of loans that were made, is it shown that plaintiff dealt with the bank. All of these transactions were with J. O. Walker. The deposition of plaintiff was taken, in which he testified: "Q. Mr. Walker, you say that other officers of the bank knew of your transactions with J. O. Walker, in regard to these loans? A. Yes, sir; his father, my brother, knew it. Q. Isn't it a fact that your brother wrote you and requested you not to be dealing with J. O. in reference to the bank business? A.

He wrote to me, but he didn't tell me not to buy any more of their papers; their notes. * * * Q. Isn't it a fact, too, that you wrote to J. O. about his father telling you that he didn't ·want you and J. O. to deal any more in the bank papers; you wrote to J. O. about that? A. I did. Q. Did you ever get a letter from him about it? A. I think he answered it. Q. You haven't that letter with you, have you. A. No. Q. You don't know where it is? A. No, I think he answered me. Q. Do you know what he said; what ·J. O. said? A. I don't know ˙what he said; I suppose he wasn't pleased with his father that he had given me such instructions." Notwithstanding this correspondence, plaintiff continued to transact his business with J. O. Walker precisely as before. Upon the point that, even if J. O. Walker was the agent of plaintiff for the making of loans and collecting interest, he was not thereby empowered to collect the principal of any loans, plaintiff himself testified: "Q. From the time you commenced to loan out in Nebraska till up to the 1st of October, 1908, did you ever receive any remittance of principal or any part of the principal from any borrower direct? A. No, sir. Q. Then, all the interest and principal, whether the latter was paid in full or in part, was collected and transmitted to you by J. O. Walker? A. Yes, sir." The business relations between plaintiff and J. O. Walker covered a period of about 15 years. During that time plaintiff had loaned through him more than $100,000, and received through him more than 100 notes and mortgages. During all of those years plaintiff never collected a dollar of either principal or interest from any borrower, nor did he ever notify any borrower of the maturity of any note or interest payment, but transacted all of that business through J. O. Walker.

The testimony of plaintiff himself shows that he kept a considerable sum of money on deposit in the bank, of which J. O. Walker was cashier, which money was kept there for the purpose of making Nebraska loans. As money would be paid in, which J. O. Walker reported to

him, it was frequently retained by J. O. until it was re-loaned. "Q. You don't know whether he kept any open account in your name or in J. O.'s name? A. I couldn't tell that. Q. You didn't stop to inquire whether he kept it in his own name or in your name? A. I don't know, no. * * * Q. As a matter of fact, a great many of his mortgages you thought you were entitled to you never got? A. Yes, sir. Q. In fact, you corresponded with him about that, did you not? A. Yes, sir. Q. And rebuked him for it, did you not? A. Yes, sir; I insisted on having the papers. Q. You didn't get them? A. No, sir. Q. When was the first time he neglected to send you the mortgage you thought you were entitled to? A. I couldn't answer that. Q. As early as 1901? A. It might have been about that time. Q. J. O. was neglectful about a number of those things? A. Yes, sir. Q. In fact, he insisted doing as he pleased in those things, did he not? A. It appears he done business in that kind of a way; he had his own time and way. Q. He was doing that since 1901? A. Along that time, I suppose." His testimony also shows a number of cases, both as to loans made to him direct and as to loans made to J. O. Walker for his use, where neither the mortgages nor assignments were forwarded to him by J. O. It shows at least one instance where J. O. accepted payment of a loan before its maturity. Plaintiff complained to him about this, stating in effect that he would have preferred to carry the loan, but nevertheless he let it go. Not a single instance is shown by him where he ever found fault with or criticised J. O. Walker for collecting a loan which was due. This fact, together with the fact that no payment of principal was ever made to him except through J. O. Walker, conclusively establishes the contention of defendants that J. O. Walker was his agent for all purposes relating to his loan business in Nebraska. It seems to us further discussion is unnecessary. From the large number of loans made in the four counties tributary to Ong, all made through J. O. Walker, everybody in that part of the state, in any

manner interested in any of those transactions, was perfectly justified in believing that J. O. Walker was the general agent and business manager of the plaintiff in the business of loaning money upon real estate, and in some instances upon collateral security. Such being the situation and the relation of the parties, the district court was right in finding that the payments made by Hale and McCrain to J. O. Walker were payments to plaintiff.

The law applicable to a state of facts as above outlined is well settled in this jurisdiction: *First Nat. Bank v. Ridpath*, 47 Neb. 96; *Thomson v. Shelton*, 49 Neb. 644; *Holt v. Schneider*, 57 Neb. 523; *Harrison Nat. Bank v. Austin*, 65 Neb. 632; and *Pine v. Mangus*, 76 Neb. 83, 85, where we said: "The appellee claims that the loan company had no authority to extend the time for the payment of $500 of the principal, nor to collect any part of the principal or interest at any time; and in his deposition states that no such authority existed. But we take into consideration the facts testified to by him, and other evidence showing the relationship which existed between him and the loan company, rather than his opinions or conclusions as to their relations." What we said there we repeat here. The facts testified to by plaintiff, and the character of the relations existing between himself and J. O. Walker, as shown by an abundance of evidence, completely outweigh the statement made by plaintiff that no authority existed or had been given to J. O. Walker to collect the principal of any of his loans.

The situation of the plaintiff, who is undoubtedly an honorable business man, is unfortunate; but if the law were otherwise than herein declared the situation of the defendants, and others similarly situated in and about Ong, would be deplorable.

The judgment of the district court is not only right, under the law, but it is just.

AFFIRMED.