ALONZO L. KRAUSE, APPELLEE, V. FRANK COX ET AL., APPELLANTS.

FILED FEBRUARY 23, 1921.   No. 21360.

1. **Principal and Agent: PROMISSORY NOTE: PAYMENT TO THIRD PARTY.** Where the holder of a past-due note is insisting upon payment in full and procures a third party to bring pressure upon the debtor to persuade him to pay, the circumstances attributable to the holder's acts being such as to give the debtor reasonable ground to infer that such party, although not in possession of the note, is authorized to receive payment as agent for the holder, the debtor, in the absence of notice to the contrary, is entitled to assume that such authority exists, and payment to such third party will be binding upon the holder.

2. **Mortgages: PAYMENT TO THIRD PARTY: BURDEN OF PROOF.** If, in defense to a foreclosure suit, an amount sufficient to discharge the mortgage debt is shown to have been paid to one authorized to

receive it as the plaintiff's agent, but the plaintiff relies upon the testimony of such agent that the money was to be applied upon a debt due to himself and not upon the mortgage debt, and the defendant denies that any such debt existed, the burden is upon plaintiff to establish the existence and validity thereof.

3. ———: ———: EVIDENCE. Evidence examined, and *held* not to establish with sufficient certainty the existence of any other debt than the one in suit upon which the payment could have been applied, and that it should be credited upon the mortgage debt in suit.

APPEAL from the district court for Thurston county: GUY T. GRAVES, JUDGE. *Reversed, with directions.*

*Ringer, Bednar & King,* for appellants.

*O. C. Anderson, contra.*

DORSEY, C.

The defendant, Frank Cox, borrowed $800 of the plaintiff, and on September 5, 1911, he and his wife and codefendant executed a note therefor and a mortgage covering a house and lots in Walthill, Nebraska. This appeal is from a decree foreclosing said mortgage. The defense was that the mortgage had been satisfied by the payment of the debt to Farley Brothers, real estate agents at Walthill, who were alleged to have been agents of the plaintiff to receive payment.

The defendants are Indians of the Omaha tribe and had built a house on the lots in question. There were mechanics' liens pressing for payment, and Farley Brothers had advanced the defendant several small loans, and he applied to them for a loan on the property. They, in turn, applied to the plaintiff, who was in the loan business at West Point, and he examined the premises and consented to loan $800 thereon. The mortgage and note sued upon, after being executed by the defendants, were forwarded to the plaintiff through Farley Brothers, and the plaintiff sent them the $800, out of which they paid off the mechanics' liens, deducted what was owing to themselves, and paid the remainder to the defendant Frank Cox. The

latter neglected the interest and taxes until February, 1914, when the accumulated interest was collected from him by Farley Brothers, who remitted it to the plaintiff.

Later on, the interest and taxes again fell into arrears and the loan ran on in that condition until the summer of 1917. The plaintiff called the attention of Farley Brothers to the default and enlisted their services to induce the defendants to pay up. Unpaid interest, taxes and insurance premiums, together with the principal of the loan, amounted in 1917 to about $1,200. The note was payable on demand, and the plaintiff had the option to declare the whole amount due in case of default. The plaintiff considered the whole amount due and urged Farley Brothers to see the defendant about it.

Farley Brothers held a note for $770, signed by the defendant as surety, and, besides that, they testified upon the trial that the defendant was indebted to them for about $600 more upon other obligations, making in all about $1,400. The defendant denied that he owed them anything except his surety obligation on the $770 note.

The defendant Frank Cox had an interest in certain Indian land, and Caryl Farley, one of the firm, persuaded him to sell this, for which he realized $3,000, which sum was to his credit in the hands of the Indian agent. They had several interviews in which Caryl Farley tried to induce the defendant to draw $2,700, which would have been enough to cover the indebtedness claimed by his firm, as well as the amount due on the plaintiff's loan. Farley, however, was unable to persuade the plaintiff to draw and pay him more than $1,200, and in August, 1917, they drove over to the agency and the defendant drew that sum and paid it to Farley.

The defendant testified that he intended and directed it to be applied in payment of the plaintiff's note and mortgage; that he mentioned the mortgage at the time, and Farley said he did not have it there, but it was at his house in Walthill. Farley denied that the note and mortgage were mentioned, and testified that the payment was made on the indebtedness owing to Farley Brothers; that

Krause v. Cox.

he asked the defendant to go right down to his office and have the money applied thereon, but that the defendant said there was no hurry and he would be over later. According to the defendant's testimony, the understanding was that they would go over to Walthill and fix the papers, which he understood to be the plaintiff's note and mortgage, but that later on, when he did go to Farley Brothers to get the papers, they would not give them to him. Farley testified that he made settlement with the defendant at Walthill and turned over to him the notes representing his indebtedness to their firm; but the defendant denied any such settlement or that he received any such papers.

It is argued on the part of the plaintiff that, although he expected and invited Farley Brothers to cooperate in bringing pressure upon the defendants to pay, it must not be taken as if he thereby authorized them to receive the money for him. They were not to assume to collect the money, but to confine themselves simply to inducing the defendants to remit the money to the plaintiff direct. If, as a result of their persuasion, the defendants were prevailed on to entrust money to Farley Brothers for transmission to plaintiff, it must be presumed that they received it, not as his agents, but as agents of the defendant to remit it. If it failed to reach its destination, the plaintiff would not be bound; he could be bound only if the money actually reached him. We think, however, that when a creditor, in order to secure payment of his debt, authorizes a third party to approach the debtor and employ persuasion to induce him to pay, the debtor is entitled to assume that the party so authorized is likewise authorized to receive the money. "The apparent authority of an agent which will bind his principal is such authority as the agent appears to have by reason of the actual authority which he has." *Cooper & Cole Bros. v. Cooper,* 90 Neb. 209.

That such ostensible authority is sufficient to establish agency to receive money in payment of negotiable paper,

though such paper is not in the possession of the alleged agent, has been held in numerous cases in this jurisdiction: *Thomson v. Shelton,* 49 Neb. 644; *Holt v. Schneider,* 57 Neb. 523; *Faulkner v. Simms,* 68 Neb. 295; *Walker v. Hale,* 92 Neb. 829. The question in the instant case is whether the circumstances were such as to justify the defendant in inferring that it would be safe to pay the mortgage debt to Farley Brothers, as agents, instead of paying it to the plaintiff direct. The circumstances that operated upon the defendant's mind to convince him that it was safe and proper to do so were attributable to the plaintiff himself, and he set them in motion. He invoked the aid of Farley Brothers to "dun" the defendant for the full amount of the debt, both principal and interest. He was present in person at one time when Caryl Farley, at his instance, demanded payment of the mortgage debt. These circumstances, coupled with the fact that Farley Brothers had previously dealt with the defendant as the plaintiff's agents in all matters regarding the loan, reassured the defendant as to their authority, and combined to produce, in his eyes, that appearance of authority which the law treats as equivalent to expressly authorized agency, when brought about by the acts of the principal himself.

The evidence is clear that the plaintiff, when he appealed to Farley Brothers to assist him in collecting the debt in 1917, did not intend to keep the collection of interest distinct from the collection of principal, or to retain the latter in his own hands while authorizing Farley Brothers to collect the former. No other inference can rationally be drawn from the admitted facts except that he expected Farley Brothers to collect both. It was not a question of collecting the past due interest and letting the principal stand. Without doubt the plaintiff considered the whole amount due and was insisting upon payment of principal and interest in full. The plaintiff testified as follows: "Q. You wanted them to collect the interest? A. Yes; if they could. Q. And it was agreeable to you that they should collect the principal, wasn't it? A. Yes,

sir; I believe it was." On redirect examination by his own counsel, the plaintiff testified: "Q. Now, Mr. Krause, what do you mean when you state that you wrote Mr. Farley that the interest was due, what do you mean that you were willing that he collect the money, what do you mean by that, that he was to go out and remind Cox about it, or did you mean that you authorized Farley to collect that as your agent? A. Not as our agent." Notwithstanding the plaintiff's concluding statement that he did not constitute Farley Brothers his agents to receive the money, we think this was a conclusion at variance with the plain import of his acts, and that the evidence clearly establishes the agency of Farley Brothers to receive payment for the plaintiff.

Although such agency is established by the record, the question nevertheless arises whether the payment of $1,200 by the defendant was to be applied upon the mortgage debt or upon the alleged indebtedness to Farley Brothers. In favor of the theory that the money was to be applied upon the mortgage debt is the fact that it was approximately the amount due the plaintiff at that time; the fact that Caryl Farley had been "dunning" the defendant for this debt for some time before he persuaded the latter to sell his land, and the payment of the mortgage debt must have figured as part, at least, of the inducement to sell it; and the further fact that Caryl Farley had been trying to induce the defendant to pay him $2,700, which would have been sufficient to cover the alleged indebtedness to Farley Brothers as well as the plaintiff's debt; but the defendant could not be persuaded to draw and pay over to Farley more than $1,200. These facts are corroborative of the testimony of the defendants that the mortgage debt was specifically mentioned when the money was paid over, and that it was understood that it was to be applied upon that. Further corroboration is furnished in the testimony of Harry L. Keefe that he overheard something said about a mortgage on the defendant's place in the conversation between Caryl Farley and the defendant at the agency. An-

other fact bearing upon the question of the application of the money is that Caryl Farley testified that he had with him at the agency the notes representing the indebtedness which he claimed the defendants owed Farley Brothers. If that were true, there seems to be no reason why, if the $1,200 was to be applied upon that indebtedness, it should not have been credited thereon at that time and the notes then turned over to the defendants, instead of deferring the settlement until a later day.

We have, on the other hand, the positive testimony of Caryl Farley that the note and mortgage in suit were not mentioned, but that the money was to be paid on alleged indebtedness owing to his firm, and that he afterwards settled with the defendant by applying the money upon that indebtedness and returning him notes representing the same.

Assuming, in accordance with the conclusion hereinbefore reached, that Farley Brothers were agents of the plaintiff to receive payment, the situation then is that the money was admittedly paid to the plaintiff's agents; but the agents claim that it was paid upon a debt owing to themselves and not upon the obligation held by their principal. In order to sustain the plaintiff's contention that his agents received the money upon a debt owing to themselves, it is necessary to find from the evidence that such a debt existed in the amount which the defendant paid. There was, it seems clear, a $770 note, although it was primarily some one else's obligation, and the defendant was liable thereon only as a surety. But Farley claimed about $1,400 against the defendant, including the note last mentioned. It is thus necessary to account for about $600 more. The defendant denied any such indebtedness, and we have nothing to support a finding that it did exist except the bare assertion of Caryl Farley. There were no papers, book entries, or other corroborative evidence. The burden was upon the plaintiff, under the circumstances of this case, to prove the existence, validity and amount of the claimed indebtedness to Farley Brothers. *Henderson*

*v. Maysville Guano Co.*, 15 Ga. App. 69; *Davis v. Hall*, 70 Neb. 678.

The defendants were unable to read English and had only a limited acquaintance and experience with business forms and usages. The case was one of equitable cognizance, and the defendants were entitled to have their rights scrupulously guarded. This is a trial *de novo*, and it is the duty of this court to scrutinize the record and arrive at an independent conclusion, giving full weight, however, to the findings of the trial court. After full reflection, we find the evidence insufficient to establish either that the indebtedness claimed by Farley Brothers existed, or that the payment in question was intended or directed by the defendants to be applied thereon; and we are of the opinion that the $1,200 paid by the defendants should be credited upon the mortgage indebtedness.

We accordingly recommend that the decree of the court below be reversed and the cause remanded, with directions to credit such payment as of the date when made, and to enter a new decree in conformity with this opinion.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to credit such payment as of the date when made, and to enter a new decree in conformity with this opinion, and this opinion is adopted by and made the opinion of the court.

REVERSED.