484

GLOBE INDEMNITY COMPANY, APPELLEE, V. THAYER COUNTY
BANK, APPELLANT.
282 .N. W. 400

FILED NOVEMBER 18, 1938.   No. 30374.

*John L. Richards, Stewart, Stewart & Whitworth* and *Charles B. Paine,* for appellant.

*Hall, Cline & Williams, contra.*

Heard before ROSE, C. J., EBERLY, DAY, CARTER and MESSMORE, JJ.

MESSMORE, J.

The plaintiff, as assignee of Goffe & Carkener, Inc., brought this action to recover from the Thayer County Bank the proceeds of a draft, dated February 1, 1930, with an attached, forged bill of lading. The draft was paid by Goffe & Carkener without knowing that the bill of lading was a forgery. The second amended petition details at considerable length evidentiary facts relating to the transaction.

The second amended answer admits the execution and payment by the plaintiff of the draft, with the forged bill of lading attached, and notice of such forgery; alleges evidentiary facts which defendant contends constitute the defense of payment, and alleges and sets forth facts which defendant contends constitute estoppel. The reply is a general denial, with the admission of certain evidentiary facts.

At the conclusion of all the evidence, the district court for Thayer county directed a verdict in favor of the plaintiff in the sum of $1,909.70, and from this verdict of the jury and the judgment of the court thereon, the defendant appeals.

The evidence is mostly by stipulation and discloses the following: George Hayes was doing business in the name of the Hebron Grain Company, at Hebron, Nebraska, and on January 29, 1930, deposited with the defendant bank a draft for $1,300, dated January 29, 1930, drawn upon Goffe & Carkener, which draft was accepted and paid on January 31, 1930, by Goffe & Carkener to the Stock Yards National Bank of Kansas City. On January 31, 1930, George Hayes, representing the Hebron Grain Company, deposited with the defendant bank a draft for $1,400, dated January 31, 1930, on the Updike Grain Company, which draft was accepted and on February 1 was paid by the grain company to the Stock Yards National Bank. Attached to both drafts were forged bills of lading. The draft sued on in this action was for $1,300, dated February 1, 1930, deposited with the defendant on the same day, drawn on Goffe & Carkener, and accepted and paid by it on February 3, 1930, to the Tootle-Lacy National Bank, of St. Joseph, Missouri. George Hayes took his own life on February 3, 1930. When the three drafts, as above set out, were deposited with defendant, they were credited to the account of the Hebron Grain Company and forwarded by defendant to its respective corresponding banks for collection. On January 29, 1930, at the time of the deposit of the draft of that date, there was a balance of $2,687.03, including the 1,300-dollar draft, in the defendant bank, in favor of the Hebron Grain Com-

pany. Subsequent to such date, and prior to the death of George Hayes, the Hebron Grain Company had withdrawn a total amount of $3,742.64. On January 31, 1930, a deposit of $2,520.31 was made in the account, and on February 1 a deposit of $1,300, being the last deposit made therein. These two deposits, added to the balance of $2,-687.03, and totaling $6,507.34, constituted the account of the Hebron Grain Company with the defendant from January 29 up to the date of the death of George Hayes. Deducting the withdrawals, taken from the balance, left a credit to the Hebron Grain Company of $2,764.70, at the time of George Hayes' death.

On February 5, 1930, Goffe & Carkener, by telegram, notified defendant that the bill of lading attached to the 1,300-dollar draft, paid by it on February 3, was probably a forgery, advised defendant that it would be held responsible if the proceeds were diverted to the estate of George Hayes, and suggested that defendant take steps to recover for its credit. On February 19, 1930, Goffe & Carkener sent a telegram to defendant, referring to its telegram of February 5, making demand on defendant for refund of the payment on the forged bill of lading attached to the draft sued on. The defendant replied that the Hebron Grain Company account contained a balance of $50; that the Stock Yards National Bank and the Fidelity Trust Company of Kansas City paid $2,700 on drafts which they held because of the instructions of Goffe & Carkener. The two drafts, one for $1,300, dated January 29, 1930, against Goffe & Carkener, and one for $1,400, dated January 31, against Updike Grain Company, which had been forwarded to the Stock Yards National Bank were collected by said bank, and later said amounts were impounded by the courts and not remitted by the Stock Yards National Bank to the defendant. The action to impound these amounts was filed by Goffe & Carkener some time after February 12, 1930, and by the Updike Grain Company February 21, 1930. The Stock Yards National Bank paid Goffe & Carkener $1,300, which evidently was in payment of the January 29 draft,

and paid the Updike Grain Company $1,400 in payment of the draft of January 31. Obviously, the draft for $1,300, sued on in this action, dated February 1, for which the Tootle-Lacy National Bank was the collecting agent, had nothing to do with the payment of the two other drafts. The $2,700 was charged to the defendant's account by the Stock Yards National Bank. The record does not disclose that the defendant was served with process in the action brought by Goffe & Carkener and Updike Grain Company against the Stock Yards National Bank and the defendant.

After the Stock Yards National Bank had charged the defendant's account with $2,700, the defendant reduced the deposit of the Hebron Grain Company with it in the sum of $2,700, which left in the defendant bank to the credit of the grain company the amount of $54.40, $9.30 having been paid out for a telephone account and $1 for elevator rent under date of February 4, 1930. The evidence further discloses that on February 15, 1930, the defendant bank closed its account with Tootle-Lacy National Bank by withdrawing the funds then on hand. The evidence shows that defendant held a chattel mortgage against the Hebron Grain Company for indebtedness of the company to the bank. This mortgage was dated October 2, 1925, and the chattels under it were sold by the administrator of the Hayes estate in March or April, 1931, for $11,525, out of which defendant bank received $9,300 and remitted to the estate $2,225. The defendant claims that it had no notice of any other claim of Goffe & Carkener, or of any other person, based on any other draft than that of February 1, 1930, the draft here in suit, and produced two witnesses who testified that the first notice they had of the plaintiff's claim was in 1932, one witness testifying that it was on July 21 of that year.

The defendant contends that the verdict and judgment are contrary to the evidence and the law.

Defendant contends that it actually paid the proceeds of the draft of February 1 to the plaintiff; that the Stock Yards National Bank gave credit for the proceeds of the

January 29, 1930, draft to the defendant, and that it actually disbursed the proceeds to Hayes prior to his death, which disbursement was two days before defendant had notice even of the February 1 forgery. Defendant also claims that the evidence shows that the Stock Yards National Bank, without authorization from defendant, paid plaintiff $1,300 because of some action taken by or at the instance of plaintiff, and that the Stock Yards National Bank charged the $1,300 against the defendant's account with it; that is, defendant involuntarily paid the $1,300. "Involuntary" is defined as "Not proceeding from choice." Webster's New International Dictionary.

Defendant contends that the burden is on the defendant to establish payment and on plaintiff to show that an admitted payment was properly applied on another debt, citing in support thereof *Davis v. Hall,* 70 Neb. 678, 97 N. W. 1023; *Krause v. Cox,* 105 Neb. 728, 181 N. W. 611; and *Hill v. Pettit,* 23 Ky. Law Rep. 2001, 66 S. W. 188. Under the facts of each case cited, we can readily admit that the principle of law therein announced is thoroughly applicable. In furtherance of its contention, defendant urges that the payment being an involuntary payment the burden of proof is on the plaintiff to prove that the involuntary payment was properly applied upon an enforceable claim, citing in support thereof *Breslin v. Boyle,* 4 Walker (Pa.) 428; *Scheffer v. Tozier,* 25 Minn. 478; and 3 Williston, Contracts, 3110, sec. 1797.

In *Breslin v. Boyle, supra,* an action was brought by a creditor against the widow of a deceased debtor, to recover for the total amount of merchandise furnished both the husband and the wife during the lifetime of the husband, and, after his death, for the account against the wife. The wife admitted that the plaintiff could recover for the amount of goods furnished her, but that she was under no legal obligation to pay the indebtedness of her husband during his lifetime. The court held that the widow was under no legal or moral obligation to pay for the merchandise ordered during her coverture, as a claim therefor could not be enforced

against her either in law or in equity; that plaintiff could not appropriate therefor, without her consent, payments made after coverture was removed at a time when he had neither a legal nor a valid claim against her.

The case of *Scheffer v. Tozier, supra,* had to do with a contract for the sale of timber, to be cut on a specified piece of ground. A certain amount of timber was cut, some of which was not on the land to which one of the contracting parties held title. The court merely held that payment was not due to the contracting party on timber not owned by him and that he could only recover payment on the timber cut on the land where he could give title thereto.

In 3 Williston, Contracts, 3110, sec. 1797, it is said: "Of course, application cannot be made by the creditor to a claim which has no validity, * * * it seems clear that since the debtor, though not directing the exact application of a payment, may exclude a particular application; and since it should be the primary principle that no violence is done to the intention of the debtor as expressed to the creditor by words or acts or circumstances, the creditor cannot appropriate the payment to a claim which he knows is disputed however little ground there may be for the dispute."

Analyzing the evidence in the instant case, we find the facts very different from those in the cases cited by defendant on its propositions of law hereinbefore set out. In the case at bar, the suit was brought on the draft dated February 1, with a bill of lading, admittedly forged, attached. The defendant was in a position to know, and obviously did know, that three drafts had been deposited with it, which it credited to the account of the depositing party, forwarding the drafts to defendant's respective corresponding banks for collection. The Stock Yards National Bank did collect the draft of January 29 for $1,300, which Goffe & Carkener paid, and the draft of January 31 for $1,400, which the Updike Grain Company paid. The defendant had knowledge of the amount of each draft and received notice from the Stock Yards National Bank that the money had been impounded by Goffe & Carkener and by the Updike Grain

Company. And, after the Stock Yards National Bank had charged defendant's account with the $2,700, defendant reduced the deposit of the Hebron Grain Company by $2,700, as testified to by Martin J. Dagefoerde, a witness for the defendant: "Q. What became of that money, can you tell? A. The $2,700? After the bank at Kansas City charged our account with $2,700 we had to reduce our balance there by that amount, see, and in doing that we had to put the currency out of the safe back into the bank in order to offset that $2,700 charge which was paid by the Kansas City bank." J. R. Kenner, on direct examination, testified: "Q. What charges did you make against that account after the death of George Hayes? A. There was $2,700 deducted from the funds appropriated by the Stock Yards National Bank." There is evidence also that officers or employees of the Stock Yards National Bank called the defendant and related the circumstances of the impounding of the money in the Stock Yards National Bank. The Stock Yards National Bank paid to Goffe & Carkener and to the Updike Grain Company the amount of money that had been advanced by them in payment of the drafts. The action of the defendant in this behalf speaks for itself, as a recognition of the validity of the two claims and that the two drafts were an enforceable obligation by Goffe & Carkener and Updike Grain Company, and, in fact, the circumstances and evidence constitute an acquiescence in and ratification of the action of the Stock Yards National Bank in paying the claims of Goffe & Carkener and of Updike Grain Company. No case cited by defendant to support its contention meets such a state of facts as existed in the instant case, and, without denying the principles of law stated in the cited cases, the circumstances and facts in the instant case are not such that the principles of law as announced in the cases cited by defendant are applicable.

On the proposition of estoppel, urged by defendant, in that it claims to have parted with valuable security and turned over a sufficient amount of funds to the administrator of the Hayes estate to have protected itself against

loss, had the defendant had knowledge of any claim other than the draft of February 1 of Goffe & Carkener against the defendant until after the security had been sold, we believe the facts, as hereinbefore set out, clearly establish that estoppel is not a defense.

The defendant received the draft of February 1, 1930, deposited it to the credit of the Hebron Grain Company, and forwarded the draft to its corresponding banks for collection. The defendant was serving in the capacity of an agent of the Hebron Grain Company. The Tootle-Lacy National Bank received the draft for collection and was acting for and on behalf of the defendant as a subagent. Goffe & Carkener, by telegram, both to the Tootle-Lacy National Bank and defendant, notified them that the bill of lading attached to the draft was probably a forgery. The defendant at the time the last telegram was received, on February 19, had the funds in its possession and had not diverted them to the estate of George Hayes; in other words, had not paid out any of such funds to its principal, the Hebron Grain Company.

Plaintiff cites 2 Am. Jur. 264, secs. 335 and 336. Section 335 reads in part as follows: "An agent to whom money has been paid for his principal through error, or under other circumstances existing at the time of payment that would entitle the payer to recover it back from the principal, is individually liable to the payer for the money so received so long as it remains in his hands and there has been no alteration in the situation of the agent towards his principal in relation to such payment."

Section 336 reads: "The effect of the agent's payment over to the principal of money which has been paid to him by a third person under mistake of fact to relieve the agent of personal liability depends upon whether the agent at the time of making payment to the principal had notice of the facts. If the agent turns the money over to the principal before he has notice that the principal is not entitled to it he is not liable therefor to the payer. If, however, the agent knows that his principal is not entitled to the funds received

for the principal from a third person, he is under a duty to return them to the one rightfully entitled thereto; if he turns over such funds to the principal with knowledge that the latter is not entitled thereto, he becomes personally liable therefor.

"For settlement with or payment to the principal to relieve the agent from liability, the settlement must be an actual one and not the constructive one arising from a change in their relations from agent and principal to debtor and creditor. Merely placing the payment to the credit of the principal will not exonerate the agent from liability to the payer in event of his recalling the payment."

Plaintiff contends that the above propositions of law apply to the facts in the instant case, and in further support thereof cites the early Massachusetts case of *Garland v. Salem Bank,* 9 Mass. 407, and *Metropolitan Nat. Bank v. Merchants Nat. Bank,* 182 Ill. 367, 55 N. E. 360, as meeting the principles of law announced in said sections 336 and 335, respectively. See, also, *Hirning v. Federal Reserve Bank,* 52 Fed. (2d) 382; *National Park Bank v. Seaboard Bank,* 114 N. Y. 28, 20 N. E. 632; *Bromfield v. Gould,* 289 Mass. 80, 193 N. E. 796; *Elliott v. Swartwout,* 10 Peters (U. S.) 137; Restatement, Agency, sec. 339.

We believe that the evidence discloses that plaintiff has proved the agency theory, pleaded in its second amended petition. In view of our holding, it is not necessary to discuss the warranty theory; nor the applicability of the federal bill of lading act and certain of its provisions to this case.

The district court did not err in directing a verdict for the plaintiff.

AFFIRMED.