WENDELL'S, INC., A NEBRASKA CORPORATION, APPELLEE, V.
COLLIN MALMKAR ET AL., APPELLANTS.

405 N.W.2d 562

Filed May 8, 1987.   No. 85-431.

Richard A. Koehler, for appellants.

Patrick R. McDermott, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff's petition filed in the district court for Perkins County, Nebraska, alleged that plaintiff is a Nebraska corporation engaged in the operation of a grain elevator in Grant, Perkins County, Nebraska, and that defendants, Duane Messner, Jean (sometimes Jane) Messner, Collin Malmkar, Kareln Bullock, and Marita DeVoe (all of whom owned farmland in Perkins County in the years 1982 and 1983) had grain stored in the elevator. Defendants Bullock and DeVoe owned farmland together and their interest will hereinafter be referred to as Bullock-DeVoe. The petition further alleged that,

in addition to his ownership interests, defendant Malmkar was the agent for each of the other defendants, that in the course of its business plaintiff received grain for storage from Malmkar, and that in May and June 1983, plaintiff, "at the request of . . . Malmkar," issued five warehouse receipts in favor of the Commodity Credit Corporation (CCC). The petition further alleged that one warehouse receipt was issued on May 31, 1983, to satisfy the delivery obligation of defendant Duane Messner; one receipt was issued on June 10, 1983, for the obligation of Jean Messner; one receipt was prepared on June 15, 1983, and issued June 22, for the obligation of Bullock-DeVoe; and two receipts were prepared on June 15, 1983, and also issued June 22, for the obligations of Malmkar.

The petition alleged that deliveries of grain from Malmkar to plaintiff's elevator began on May 14, 1983, and (as shown by the evidence, but not alleged in the petition), after 112 deliveries on 20 days, concluded on June 23, 1983. Plaintiff then alleged that, due to a mistake in keeping its records, it issued the five warehouse receipts indicating deliveries totaling 90,069 bushels of corn, when actually only 72,728.62 bushels were delivered to it by defendants. The petition then alleged that as a result of the error in plaintiff's recordkeeping, defendants were unjustly enriched to the damage of plaintiff

in the amount of $75,957.29 the fair market value of 22,340.38 bushels of corn [the difference between 90,069 plus 5,000 other bushels purchased by plaintiff and 72,728.62] and the value received by Collin Malmkar for himself and for and on behalf of his principals, being all the other named defendants.

Defendants Duane Messner, Jean Messner, and Collin Malmkar filed a joint answer admitting that plaintiff received grain from Malmkar, admitting the issuance of the warehouse receipts by plaintiff, admitting that 5,000 bushels of corn were purchased by plaintiff from Malmkar (apparently as distinguished from stored corn), admitting plaintiff's allegation that "said receipts were duly issued to Commodity Credit Corporation in satisfaction of delivery obligations of Defendants to the CCC under the PIK program," and generally denying the other allegations in the petition.

Defendants Bullock-DeVoe filed a separate answer, through a different attorney, generally denying the allegations of the petition and setting out various affirmative defenses.

In a separate pleading filed 10 months after his answer, through the same attorney who filed the Messners-Malmkar answer, defendant Malmkar counterclaimed against plaintiff, alleging that plaintiff had, in June of 1982, converted 15,317 (later amended to 10,317) bushels of Malmkar's corn. Plaintiff generally denied the allegations of the counterclaim. In the subsequent trial, the jury returned a verdict for plaintiff on Malmkar's counterclaim. Malmkar did not appeal on this issue, and no further mention need be made of it, except as it is concerned with the question of the representation of the various parties later discussed.

The case was tried to a six-person jury, which returned a verdict of $60,659.55 against all the defendants. Pursuant to the court's instructions, the jury in its verdict apportioned this amount against the various defendants as follows: 11 percent ($6,672.55) against Duane Messner; 15 percent ($9,098.93) against Jean Messner; 13 percent ($7,885.74) against Bullock-DeVoe; and 61 percent ($37,002.33) against Malmkar. Judgment was entered against defendants in the manner set out in the verdict.

A notice of appeal on behalf of all five defendants was timely filed, in a single document, by David T. Schroeder, the attorney representing the Messners and Malmkar at the trial, as "Attorney for Defendants." At the prehearing conference before this court's hearing officer in June of 1985, defendants-appellants were represented by the same attorneys who tried the case, Schroeder for defendants Messners and Malmkar and Richard A. Koehler for defendants Bullock-DeVoe. Schroeder informed the hearing officer of a possible conflict of interest among his clients, but informed the court that he had made full disclosure of the possible conflict to the Messners and Malmkar and that a different attorney would probably represent the Messners on appeal.

On August 20, 1985, Koehler entered his appearance in this court for appellants Messners and Malmkar, in addition to his representation of Bullock-DeVoe. On the same day, Schroeder

withdrew as attorney in the case. Koehler later filed a motion to extend the briefing date, stating he was filing a brief on behalf of all appellants and needed additional time to consider the issues raised by his new clients and "to properly advise all of the other Appellants of potential problems with having just one counsel submit a brief for all." Koehler has advised this court that such a full disclosure was made to all appellants, and the appellants, in effect, insisted that he represent all of them. This protracted statement of the problems of representation in this case is set out in view of the result in this case, and the possibility that it might appear that this court is sanctioning and approving single representation of litigants with conflicting interests.

We specifically disapprove the actions of attorneys in representing conflicting interests in litigation, even with the consent of the clients involved. We recognize that if such conflicting interests are represented by the same attorney after full disclosure of the facts and consultation with each client, the representation may be ethically proper. Representation of multiple parties in litigation is not prohibited per se. See, *Spindle v. Chubb/Pacific Indem. Group*, 89 Cal. App. 3d 706, 152 Cal. Rptr. 776 (1979); *Wait v. District Court*, 81 Nev. 612, 407 P.2d 912 (1965).

We note, however, our disciplinary rules, which provide in Canon 5, DR 5-105, of the Code of Professional Responsibility:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of his client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that

he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Even though there was a disclosure to all defendants of the possible conflict, and apparently an insistence on their part that the attorney represent all, the result demonstrates the difficulties inherent in such an undertaking. Because of the representation of conflicting interests, both the trial court and this court were left to sort out confusing fact issues without the benefit of true advocacy. No attorney should permit himself or herself to be placed in a position which he or she knows will prevent the proper performance of the attorney's function.

Appellants set out, in substance, the following errors: (1) Appellee did not go to trial on a theory of recovery upon which relief could be granted; (2) the trial court erred in not dismissing defendants Messner from the lawsuit; (3) the trial court erred in directing a verdict on proration of the jury's verdict; (4) the court erred in giving its instruction on mistake and in failing to give submitted instructions on that issue; (5) the court erred in giving its instruction on damages; and (6) the verdict is not supported by the evidence. For the reasons hereinafter set out, the judgment against defendants Duane Messner, Jean Messner, Kareln Bullock, and Marita DeVoe is reversed and their cause remanded for dismissal, and the cause is reversed and remanded for a new trial as to defendant Collin Malmkar.

The facts adduced by plaintiff showed that defendant Malmkar did business with plaintiff in the summer of 1983 and that the nature of that business was "the delivery of Commodity Credit corn to that warehouse." Malmkar testified that the bushels "we had to deliver [to plaintiff] for — to cover the BID bushels was 90,069." The record shows that Malmkar was the agent of all defendants, but also shows that the principal-agent relationship between Malmkar and each of the other defendants was not the same in each instance. Malmkar was the farm manager for defendants Duane Messner and Jean Messner and received 10 percent of the production as his manager's fee for supervising the Messners' farm operations from planting to marketing. Malmkar acted as agent for

Bullock-DeVoe only for storage of their corn for a storage fee, and the Bullock-DeVoe participation in the events of this lawsuit was initiated when Malmkar told Bullock, as stated in Bullock's testimony, that plaintiff "would like to handle the grain and they would haul it for nothing, no charge to us." The record shows no common interest among the defendants, other than the fact that Malmkar was an agent for each of them and the fact that their corn production was commingled in Malmkar's storage facilities. The only way in which plaintiff could identify corn deliveries as those of a particular defendant was "because Collin [Malmkar] specified that this particular amount had been delivered to their account." Each defendant had a separate loan in varying specific amounts from CCC and had separate delivery obligations in connection with those loans.

In its brief at 13, plaintiff-appellee states that it "treated the whole delivery as one transaction" and that "[t]he Trial Court correctly interpreted the transaction as a single transaction . . . ." No facts are referred to by plaintiff to support that conclusion. The brief goes on to state at 13-14:

> The various receipts were issued by the designation of Defendant Malmkar. The Trial Court . . . treated all of the defendants equally, the Plaintiff established everything within its power to establish. If Messners are ill served by Malmkar their remedy lies against Malmkar or in a suit for contribution and not in the denial of a recovery to the Plaintiff or the imposition of a greater burden upon the Defendants Bullock and DeVoe.

That statement of position by appellee clearly points out the conflict in representation referred to above. It does not, however, dispose of the legal problem presented in the cause against the defendants Messner.

With regard to that problem, we postpone the discussion herein of the correctness of plaintiff's theory of "mistake" in affording a remedy for plaintiff's bookkeeping errors. We later set out that we believe the remedy is available to plaintiff, but for the purpose of disposing of plaintiff's cause against the two Messners, we assume the "mistake" remedy is available.

With regard to defendant Duane Messner, the record,

through the U.S. Department of Agriculture's "Commodity Delivery Notice," shows that the "outstanding loan quantity" of Duane Messner was 14,154 bushels with a "balance to be settled" of $40,621.98, and a "disbursement date" of December 12, 1982. The outstanding loan quantity figure on this document is crossed out and 9,704 written in. Other testimony showed that Duane Messner satisfied a part of his obligation to CCC by delivery of 4,450 bushels of corn at Dudden Elevator at Venango, Nebraska, leaving an obligation of 9,704 bushels handled in the transaction relevant to this lawsuit.

Malmkar delivered grain from his storage facilities to plaintiff's elevator beginning May 14, 1983. By May 25, 1,140,200 pounds of corn had been delivered. This number of pounds of corn, when divided by 56 (the number generally used for this purpose), converts to 20,360.7 bushels. On May 31, warehouse receipt No. 381007 was issued to CCC to satisfy the obligation of Duane Messner. The amount was apparently designated by agent Malmkar. There is nothing in the record to show that Malmkar did not have the authority, as an agent, to make this designation. Only defendants Malmkar and Bullock (in addition to other witnesses, of course) testified. No evidence on the particular point of Malmkar's authority was adduced. It can only be presumed, in the absence of evidence, that Malmkar's agency authority extended to include the right of designation employed with respect to delivery of corn. If that were not the fact, the delivery of corn in any such situation would come to a halt, and no business would be transacted.

Once that issue is decided, it is clear that more than enough bushels of corn of Duane Messner had been delivered on May 31, 1983, to support the issuance of a warehouse receipt that date to CCC in the amount of 9,704 bushels. Plaintiff's witnesses Roger Wendell, plaintiff's president, and Maxine Wendell, plaintiff's secretary-treasurer and bookkeeper, testified that at the time of the issuance of warehouse receipt No. 381007 for the benefit of Duane Messner "no mistake had been made."

The record also shows that at the time of the issuance of warehouse receipt No. 381011 on June 10, 1983, more than enough bushels of corn had been delivered to plaintiff, and

apparently designated by agent Malmkar to satisfy the delivery obligation of defendant Jean Messner, to support the issuance of that receipt in the amount of 13,364 bushels. Robert and Maxine Wendell testified explicitly that no mistake had been made at the time warehouse receipt No. 381011 was issued for the benefit of defendant Jean Messner.

The thrust of plaintiff's lawsuit against the five defendants is that plaintiff made mistakes which resulted in defendants' unjust enrichment. As stated in the court's instructions, plaintiff had to prove that warehouse receipts "overstating the amount of corn received by plaintiff were issued for the credit of defendants" and that "the overstatement, if any, was by mistake and was involuntary."

With regard to defendants Duane Messner and Jean Messner, there was no overstatement of the amount of grain and no mistake. No contention is made to us that agent Malmkar's designation that the first corn delivered was that of defendants Messner was beyond Malmkar's authority.

The trial court erred in not sustaining the Messners' motion to dismiss and in not dismissing defendants Duane Messner and Jean Messner. The cause, insofar as those two defendants are concerned, is reversed and remanded with directions to dismiss.

After the second warehouse receipt was issued to satisfy the obligation of defendant Jean Messner, additional deliveries of grain were made to plaintiff by Malmkar. After the June 14, 1983, deliveries, plaintiff's records (exhibit 6) showed plaintiff had received a total of 1,837,990 pounds of corn from the Malmkar deliveries. Maxine Wendell left on a vacation, and on June 15 a temporary employee took over the records. At the conclusion of the June 15 business day the deliveries totaled 2,184,364 pounds of corn. By June 23, the deliveries were concluded, and plaintiff's records showed that a total of 4,072,803 pounds of corn had been delivered to plaintiff through Malmkar.

On June 15, 1983, the new employee, at the direction of Roger Wendell, plaintiff's president, prepared two warehouse receipts to Collin Malmkar and one to Bullock-DeVoe, in a total of 3,752,056 pounds of corn. The two earlier warehouse receipts issued to cover the obligations of the Messners (in the

total of 1,272,400 pounds of corn) were not deducted from the running total, and, as can be seen, plaintiff, if its evidence is believed, issued warehouse receipts in excess of corn received into storage at its elevator. The reason the last three warehouse receipts were issued on June 22 and indicate the grain was received June 15, while substantial amounts of corn were received after that date, is not explained in the record.

In any event, it is clear that plaintiff proved, if its evidence is believed, that it issued the last three warehouse receipts because of its own mistake of fact. Defendants' allegation that plaintiff's evidence, if believed, does not support a finding of mistake is without merit. The trial judge properly submitted the issue of mistake to the jury.

With regard to the remaining three defendants (hereinafter defendants means only those three), the basic question presented is whether the trial court erred in submitting to the jury the issue that plaintiff could recover, from defendants, money damages resulting from plaintiff's unilateral mistake. Defendants' position is set out in appellants' brief at 13:

Wendell's Inc. filed suit on a unilateral mistake, it pled a unilateral mistake in its Petition; it proved a unilateral mistake at the trial. It did not plead or prove any excuse for the unilateral mistake. The unilateral mistake was made by its own employees and officers. The unilateral mistake was made or came about through the inattention and/or negligence of Wendell's Inc.

Defendants go on to state, correctly, that "Wendell's, Inc. does not allege nor did it attempt to prove that any of the Appellants had anything at all to do with the alleged error." *Id.* Notwithstanding that factual situation, this court has recognized that one who transfers money to another under a mistake of fact may recover such overpayments if the payments were involuntary and resulted in unjust enrichment of the person receiving the payment.

In *Hersch Buildings, Inc. v. Steinbrecher*, 198 Neb. 486, 490, 253 N.W.2d 310, 312 (1977), a building contract case involving a mistaken overpayment to a builder, we stated that in such cases, "All payments are presumed to be voluntary until the contrary is made to appear, and the burden rests on the party seeking to

recover a payment to prove that it was involuntary." In clarification of the word "involuntary," we went on to state that the plaintiff in the *Hersch* case had to prove "that its overpayments were made by mistake, and were therefore involuntary." *Id.*

In *Globe Indemnity Co. v. Thayer County Bank*, 135 Neb. 484, 488, 282 N.W. 400, 402 (1938), we defined "involuntary" as " 'Not proceeding from choice.' " Webster's Third New International Dictionary, Unabridged 1191 (1981), defines it as "springing from accident or impulse rather than conscious exercise of the will : unintentional . . . ."

The same principle was applied to mistaken payments made under insurance policies. In *Chalupa v. Hartford Fire Ins. Co.*, 217 Neb. 662, 666, 350 N.W.2d 541, 544 (1984), we stated: "An insurer who has made a payment under a mistake of fact that the terms of an insurance contract require such payment is entitled to restitution, at least where the payee has not so changed his position that it would be inequitable to require him to make full payment." See, also, *Federated Mut. Ins. Co. v. Good Samaritan Hospital*, 191 Neb. 212, 214 N.W.2d 493 (1974), where the doctrine is further discussed in pointing out that a creditor who has innocently received payment from a third party is not under a duty to make restitution to the payor, which has made a mistake of fact in its dealings with the debtor. The *Federated* case left open the right of the payor, the insurance company, against its insured, the debtor. See, also, *Nebraska State Bank v. Sherlock*, 180 Neb. 772, 145 N.W.2d 573 (1966), concerning a mistaken payment of two checks by a bank.

In this case, a similar question of mistake was presented. Plaintiff's actions were involuntary in the sense they were the result of a mistake of fact, if the jury so found. Since the cause must be remanded for new trial, we point out that the jury should be instructed as to the meaning of the word "involuntary" used in the court's instructions.

The trial court was correct in submitting plaintiff's case, based on mistake, against Malmkar, but not as against Bullock-DeVoe. When a unilateral mistake is made and a party receives the benefit of that mistake, before the mistaken payor can

recover the mistaken payment, it must also show that the person receiving the payment has been unjustly enriched. In the case of Bullock-DeVoe, plaintiff alleged that Bullock-DeVoe were unjustly enriched, and Bullock-DeVoe specifically denied any unjust enrichment. The evidence is undisputed that Bullock-DeVoe had an outstanding loan quantity of 12,118 bushels of corn with CCC. The evidence is also undisputed that plaintiff issued its warehouse receipt No. 381015 to CCC for the satisfaction of Bullock-DeVoe's obligation, showing corn received in the amount of 12,118 bushels. Uncontested evidence from Kareln Bullock showed that Bullock-DeVoe had no corn left after 12,118 bushels of corn were delivered to plaintiff. Bullock-DeVoe have no corn left, but they have a warehouse receipt in lieu of that corn. Bullock-DeVoe have not been unjustly enriched in any sense, but have come out exactly even. Plaintiff is not entitled to recover back from them on account of plaintiff's own mistake. The trial court should have directed a verdict in favor of defendants Kareln Bullock and Marita DeVoe at the conclusion of all the evidence. The judgment against these two defendants is reversed and the cause remanded with directions to dismiss plaintiff's case against them.

An entirely different situation exists as to defendant Malmkar, particularly because of his dual role as principal and as agent. The record shows that during this general time, Malmkar was also making grain sales to Ed Duggan, Inc., of Colorado. The Duggan sales began on June 28, 1983, and ended July 7, and totaled 2,425,825 pounds of corn, or, on a 56-pound conversion basis, 43,318.30 bushels of corn. Some of this grain was sold on behalf of Duane Messner and others, including Carl Dean. Malmkar was unable to testify as to the amount of shares due others because his records no longer existed. Additionally, Malmkar received corn as rent from several parties, and a quantity of corn was received from Noel Bullock. Malmkar testified that all this corn was handled through his storage facilities.

Additionally, plaintiff developed a system which avoided a second handling of a substantial quantity of corn, but which inevitably led to further confusion between Malmkar and

plaintiff. Plaintiff had entered into a contract of its own with Valley Feed & Seed to sell 70,000 bushels of corn. Plaintiff would send Valley trucks to Malmkar's storage site, where the trucks would be loaded with corn. The trucks would then return to plaintiff's elevator and be weighed. The Malmkar corn would later be credited to the delivery obligations of Malmkar and the other defendants, but the corn itself would remain on the Valley trucks and be forwarded to satisfy plaintiff's contractual obligation to Valley.

It is apparent that large quantities of corn were handled by plaintiff and Malmkar, and errors in those transactions might have created an advantage to either plaintiff or Malmkar, but did not in any way unjustly enrich the other four defendants. The evidence does not show, in any degree, that the other four defendants received anything in excess of credit in the precise amount to which they were entitled.

The jury determined that the plaintiff had made a mistake. The only person disclosed in the evidence who could have been unjustly enriched on account of that mistake was defendant Malmkar. Due to the manner in which the case was presented, with four additional defendants, it cannot be said that Malmkar has received a fair trial. The cause must be remanded for a new trial, as between plaintiff and Malmkar, consistent with this opinion.

The issue of damages must be clarified on remand. The only instructions referring to damages are instruction No. 2 and instruction No. 10. Instruction No. 2 sets out, as a part of plaintiff's burden of proof, that plaintiff must prove "[t]he amount of money, if any, by which the defendants have been unjustly enriched as a result of said overstatement and which is allowed by way of damages."

Instruction No. 10 provides: "The measure of damages for a mistake and involuntary credit is the fair and reasonable value of the credit to the recipient at the time of its receipt."

The concept of "fair and reasonable value of the credit" is not discussed in the evidence. Instead, the documentary evidence indicates, with respect to defendant Malmkar, a total "outstanding loan quantity" of 34,435 bushels and a "balance to be settled" of $86,776.20, as shown on a commodity delivery

notice, in connection with warehouse receipt No. 381013, to discharge part of Malmkar's obligation to the CCC. Calculations from this document show a per bushel value of $2.52. Calculations made from a similar document executed in connection with warehouse receipt No. 381014, also issued to Malmkar, show a per bushel value of $2.87, which happens to be the same value as that which can be calculated from warehouse receipts issued to the other defendants. Whatever those values mean, they certainly have a bearing on the amount of damages, if any, due plaintiff.

A further discrepancy must be noted. In the two warehouse receipts issued to Malmkar (as well as in the receipt issued to Bullock-DeVoe), the figure set out in "Net Pounds" has been altered by the crossing out of the pounds initially entered (1,859,490 and 1,104,192) and the interlined entries of 1,928,360 pounds and 1,145,088 pounds respectively. It is of further interest that the "Warehousman's [sic] Copy Duplicate" in both instances have only the interlined numbers and are not duplicates in that respect. Plaintiff's president testified he has no knowledge as to how this happened, and plaintiff's temporary employee testified she knows nothing of the discrepancy.

Whoever made the change is not known, but the reason for the change is clear—another mistake. The "Test Wt. lbs." on each warehouse receipt in question is 54. When the original pounds on each receipt are divided by 54, the number of bushels is correctly set out in each warehouse receipt. When the original pounds, however, are divided by 56, the number of bushels on the receipt are not mathematically correct. A balance has obviously been forced, on the amended documents, by multiplying the number of bushels on each receipt by 56. The resulting documents are inconsistent within their four corners. No explanation is available in the record before us, and Malmkar does not complain. The net change in Malmkar's two receipts shows an increase of 109,766 pounds of grain—a substantial difference, particularly when plaintiff alleges with precision that its mistake has resulted in an overstatement of corn received "by 22,340.38 bushels." The cause must be reversed and remanded for a new trial on all issues against

defendant Malmkar. The cause is reversed and remanded with directions to dismiss as to defendants Duane Messner, Jean Messner, Kareln Bullock, and Marita DeVoe.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS AS TO DUANE MESSNER, JEAN MESSNER, KARELN BULLOCK, AND MARITA DEVOE, AND REVERSED AND REMANDED FOR A NEW TRIAL AS TO COLLIN MALMKAR.

KRIVOSHA, C.J., concurs in the result.