[No. 12955-8-II.   Division Two.   April 11, 1991.]

KERRY R. CLARK, *Appellant,* v. RICK
LUEPKE, ET AL, *Respondents.*

---

[2]Chalker commenced work in May 1985, and the *CH2M* opinion was filed in April 1987.

*David W. Meyer,* for appellant.

*Ronald W. Greenen* and *Greenen & Sebby,* for respondents.

MORGAN, J.—Clark appeals a determination that Luepke, an automotive repairman, is entitled to be paid even though he violated the Automotive Repair Act, RCW 46.71. We affirm.

At all material times, Clark owned a 1978 Jeep CJ5 with a high performance engine. The engine quit functioning, and on August 22, 1985, Clark took the vehicle to Luepke for repairs. Luepke owned and operated a car repair shop.

The repair work that was needed was exceptional rather than routine, and Luepke could not estimate the cost of repairs without tearing down the engine. Nevertheless, Clark gave oral authorization to proceed with repairs.

At the time of their initial contact, the parties discussed the fact that Clark might have insurance or warranty coverage for all or part of the repairs, and Luepke talked to Clark's insurance company on the phone. However, Luepke never agreed that he would look only to the insurance company for payment, and Clark remained ultimately responsible to pay whatever amount was properly due Luepke.

Luepke completed the work without undue delay, and his bill came to $2,764. In view of the work performed, the bill was not excessive or unreasonable. Nevertheless, Clark could not pay it, and over Clark's objection, Luepke refused to release the vehicle.[1] After about 6 weeks, Clark paid the bill[2] and Luepke released the vehicle. Clark, according to his own testimony, did not suffer any damage due to Luepke's retention of the vehicle.[3]

At all material times, Luepke failed to comply with the Automotive Repair Act (ARA), RCW 46.71. His shop did not have the sign required by RCW 46.71.043,[4] and even though the cost of repairs was obviously going to exceed $75, he never gave Clark a written estimate or presented him with the alternatives set forth in RCW 46.71.040.

---

[1]According to the trial court's revised memorandum opinion, however, the parties had an arrangement whereby Luepke let Clark use the Jeep when he needed to, so long as Clark left a substitute vehicle in Luepke's possession.

[2]Clark's insurance company reimbursed him for $1,000 of the bill.

[3]See footnote 1.

[4]RCW 46.71.043 provides in pertinent part,

"An automotive repairman shall post in a prominent place on the business premises one or more signs, readily visible to customers, in the following form:

"YOUR CUSTOMER RIGHTS
"ON REQUEST, YOU ARE ENTITLED BY LAW TO:
    "(1) A WRITTEN ESTIMATE OF REPAIRS WHICH WILL COST MORE THAN SEVENTY-FIVE DOLLARS;
    "(2) RETURN OR INSPECTION OF ALL REPLACED PARTS; AND
    "(3) AUTHORIZE ANY REPAIRS WHICH EXCEED THE ESTIMATED PRICE BY MORE THAN TEN PERCENT."

In July 1986, Clark filed this lawsuit. At trial, he asked for restitution of the money that he had paid Luepke, and for reasonable attorney's fees. After finding the facts described above, the trial court denied relief.

On appeal, Clark's first contention is that various findings are not supported by substantial evidence. *Holland v. Boeing Co.*, 90 Wn.2d 384, 390, 583 P.2d 621 (1978); *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). After carefully reviewing the record, we are satisfied that each finding was properly supported by the evidence.

■ Clark's second and central contention is that he is entitled to restitution because Luepke was in violation of the ARA. A payor may maintain an action to recover money paid involuntarily due to coercion, duress or compulsion,[5] *Hawkinson v. Conniff,* 53 Wn.2d 454, 458, 334 P.2d 540 (1959); *Speckert v. Bunker Hill Ariz. Mining Co.,* 6 Wn.2d 39, 52, 106 P.2d 602, 131 A.L.R. 125 (1940); *Maxwell v. Provident Mut. Life Ins. Co.,* 180 Wash. 560, 567, 41 P.2d 147 (1935), if retention of the money would unjustly enrich the payee. *Pacific Coal & Lumber Co. v. Pierce Cy.,* 133 Wash. 278, 281, 233 P. 953 (1925). Thus, when a payor sues for the restitution of an allegedly involuntary payment, the essential elements are (1) that payment was made, (2) that it was made involuntarily, and (3) that the payee would be unjustly enriched if allowed to retain the payment. *Wendell's, Inc. v. Malmkar,* 225 Neb. 341, 405 N.W.2d 562, 568 (1987); *In re Estate of McCallum,* 153 Mich. App. 328, 395 N.W.2d 258, 261 (1986). Under common law principles, the payor has the burden of proving each of these elements by a preponderance of the evidence. 66 Am. Jur. 2d *Restitution and Implied Contracts* § 97

---

[5]Involuntariness is but one reason a payment can be recovered. Others, not pertinent here, include fraud, certain mistakes of fact, illegality, and the like. 66 Am. Jur. 2d *Restitution and Implied Contracts* §§ 91–152 (1973).

(1973) (payor has burden of proving payment was involuntary); *Wendell's,* 405 N.W.2d at 568; *Phoebus v. Manhattan Social Club,* 105 Va. 144, 52 S.E. 839, 840 (1906). Ordinarily but perhaps not always, the third element will be proved by showing that the payee was not legally entitled to receive payment in the first instance. "Where the compulsion was to pay that which was legally due, there can be no recovery, since in such case there is no damage." 66 Am. Jur. 2d *Restitution and Implied Contracts* § 97 (1973).

In this case, it is undisputed that Clark paid Luepke, and that the payment was involuntary.[6] What is disputed is whether Luepke would be unjustly enriched if he were now allowed to retain Clark's payment. According to Clark, Luepke would be unjustly enriched because he was in violation of the ARA, and one effect of violating that act is to bar the violator from receiving payment for work performed. According to Luepke, he would not be unjustly enriched, because a violator of the ARA is entitled to recover the reasonable value of work performed so long as he proves that the work was reasonable, necessary, and justified. Thus, the dispute can be resolved by answering one question of law: Does violating the ARA have the effect of barring recovery for the reasonable value of work reasonably, necessarily, and justifiably performed?

As originally enacted in 1977, the ARA prohibited the automotive repairman who violated it from charging or collecting for work performed or parts supplied. *I-5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 10, 11, 645 P.2d 716, *review denied,* 97 Wn.2d 1033 (1982); *Webb v. Ray,* 38 Wn. App. 675, 678, 688 P.2d 534, *review denied,* 103 Wn.2d 1010 (1984); *Garth Parberry Equip. Repairs, Inc. v. James,* 101 Wn.2d 220, 223, 676 P.2d 470 (1984). In

---

[6]Because Luepke was in violation of the ARA, he had no right to claim a possessory lien against Clark's vehicle. RCW 46.71.050. Nevertheless, he did so, and Clark had to pay his bill in order to secure the vehicle's return. On these facts, Clark's payment was involuntary. *See Johnson v. Townsend & Co.,* 161 Wash. 332, 335, 296 P. 1046 (1931).

1982, however, several sections of the act were substantially amended,[7] and two new sections were added.[8] Laws of

---

[7]Three of the amended sections are pertinent here. RCW 46.71.040 was amended in part as follows:

"(1) If the price of the automotive repairs is estimated to exceed ((fifty)) seventy-five dollars and the repairman chooses to preserve any right to assert a possessory or chattel lien or if the customer requests a written price estimate, the automotive repairman shall, prior to the commencement of supplying any parts or the performance of any labor, provide the customer a written price estimate or the following choice of estimate alternatives:

"'YOU ARE ENTITLED TO A WRITTEN PRICE ESTIMATE FOR THE REPAIRS YOU HAVE AUTHORIZED. YOU ARE ALSO ENTITLED TO REQUIRE THE REPAIRMAN TO OBTAIN YOUR ORAL OR WRITTEN ((CONSENT)) AUTHORIZATION TO EXCEED THE WRITTEN PRICE ESTIMATE. YOUR SIGNATURE OR INITIALS WILL INDICATE YOUR SELECTION.

"1. I request an estimate in writing before you begin repairs. Contact me if the price will exceed this estimate by more than ten percent.
"....

"2. Proceed with repairs but contact me if the price will exceed $ ....

"3. I do not want a written estimate. . . .'" Laws of 1982, ch. 62, § 3.

RCW 46.71.050 was amended as follows:

"A repairman who performs work or supplies parts which are not a part of the written price estimate or which together exceed one hundred ten percent of the written price estimate, without the oral or written ((consent)) authorization of the customer or who is not required by section 3 of this act to provide the customer with a written price estimate or a choice of estimate alternatives shall be barred from asserting a possessory or chattel lien for the amount of the unauthorized parts or labor upon the motor vehicle. A repairman who supplies used, rebuilt, or reconditioned parts in violation of RCW 46.71.020 or who fails or refuses to return replaced parts as required by RCW 46.71.030 shall be barred from asserting a possessory or chattel lien for the amount charged for that replacement part upon the motor vehicle." Laws of 1982, ch. 62, § 6.

And RCW 46.71.070 was amended as follows:

"((The assertion of a possessory or chattel lien in)) A violation of this chapter ((shall be)) is an unfair act or practice ((under)) in violation of the consumer protection act, chapter 19.86 RCW. In an action under chapter 19.86 RCW due to an automotive repairman's charging or attempt to charge a customer an amount in excess of one hundred ten percent of the amount authorized by the customer, a violation shall not be found if the automotive repairman proves by a preponderance of the evidence that his or her conduct was reasonable, necessary, and justified under the circumstances.

"Notwithstanding RCW 46.64.050, no violation of this chapter shall give rise to criminal liability under that section." Laws of 1982, ch. 62, § 9.

[8]One of the new sections, RCW 46.71.043, is quoted in footnote 4. The other, RCW 46.71.047, provides:

1982, ch. 62. According to the plain language of these amendments, their purpose and effect was to remove the absolute prohibition set up in the original act, and to allow the automobile repairman to charge and collect for work performed and parts supplied, notwithstanding violations of the ARA, assuming of course that he or she was otherwise entitled to do so under general contract principles.

Although the 1982 amendments restored to the repairman his or her common law right to recover for the reasonable value of work performed, they also wrought at least two changes in the common law. First, they placed on the repairman who violates the ARA the burden of proving that his or her conduct is reasonable, necessary and justified. RCW 46.71.047; RCW 46.71.070. In cases where the repairman sues to collect his or her bill, the effect is merely to confirm the common law allocation of the burden of proof. But in cases such as the present one, where the customer pays the bill and then sues for restitution, the effect is to transfer the burden of proof from the customer to the repairman. *See Phoebus,* 52 S.E. at 840; *Wendell's,* 405 N.W.2d at 568; RCW 46.71.047, .070.

Second, the amendments barred the repairman who violates the ARA from asserting a possessory lien. Instead of being able to hold the car until payment is received, the repairman who is in violation must now return the car upon demand, whether or not the repairs have been paid for, and then seek help from the courts in the event that payment is not forthcoming. Refusal to return the car will result in liability for damages resulting from the assertion of the lien,

---

"If an automotive repairman is required by section 3 of this act to provide the customer a written price estimate or a choice of estimate alternatives, the repairman is barred from recovering in an action to recover for automotive repairs any amount in excess of one hundred ten percent of the amount authorized by the customer unless the repairman proves by a preponderance of the evidence that his or her conduct was reasonable, necessary, and justified under the circumstances. In any action to recover for automotive repairs the prevailing party may, in the discretion of the court, recover the costs of the action and a reasonable attorneys' fee." Laws of 1982, ch. 62, § 5.

*e.g.,* loss of use, even though it will not bar recovery of the reasonable value of work performed.

When these principles are applied to the present case, it can be seen that the trial court's rulings were correct. Although Clark would have had the burden of proving unjust enrichment at common law, Luepke's violations of the ARA cast upon him the burden of proving that he was entitled to receive and retain payment for the work he performed, *i.e.,* the burden of proving that his conduct was reasonable, necessary, and justified. RCW 46.71.047; RCW 46.71.070. At trial, the court found that Luepke did that. As a consequence, he was entitled to payment for the work he did, and he will not now be unjustly enriched if he is permitted to retain the payment that Clark made.[9]

The only remaining issues concern attorney's fees. Clark contends that he was entitled to reasonable attorney's fees because of RCW 46.71.047.[10] By the express terms of that statute, however, fees are discretionary with the trial court, and there was no abuse of discretion here.

Clark next contends that he is entitled to reasonable attorney's fees because of RCW 19.86.090.[11] By the express terms of RCW 19.86.090, such fees are mandatory,[12] *Tradewell Stores, Inc. v. T.B.&M., Inc.,* 7 Wn. App. 424, 430, 500

---

[9]As the trial judge correctly noted in his oral ruling, Luepke's violations also made him liable for any damages caused by his refusal to return the vehicle for 6 weeks, including loss of use, but according to Clark's own testimony, no such damages were incurred. See footnote 1.

[10]RCW 46.71.047 is set forth in footnote 8.

[11]RCW 19.86.090 provides: "Any person who is injured in his or her business or property . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee . . .."

[12]While an award of fees is mandatory when RCW 19.86.090 applies, the amount of the award is discretionary with the trial court. *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.,* 37 Wn. App. 1, 20, 680 P.2d 409 (1984); *Nuttall v. Dowell,* 31 Wn. App. 98, 114, 639 P.2d 832, *review denied,* 97 Wn.2d 1015 (1982); *Wilkinson v. Smith,* 31 Wn. App. 1, 14, 639 P.2d 768, *review denied,* 97 Wn.2d 1023 (1982).

P.2d 1290 (1972); *State v. Black,* 100 Wn.2d 793, 805, 676 P.2d 963 (1984) (dictum), but only if the claimant is a person who is "injured in his or her business or property . . .." RCW 19.86.090. Here, Clark did not seek to enjoin further violations of the Consumer Protection Act, nor did he prove or recover any actual damages. Thus, he was not "injured in his business or property" within the meaning of RCW 19.86.090, and he may not use that statute as a basis for claiming fees.

Luepke also contends that he is entitled to reasonable attorney's fees as a matter of law. His first asserted basis, RCW 46.71.047, does not help him for the same reason it did not help Clark—it makes the matter of fees discretionary, and there was no abuse of discretion here. His second asserted basis, RCW 4.84.030, is simply not apropos. It allows the prevailing party to recover "costs and disbursements", but the definition of "costs and disbursements" does not include reasonable attorney's fees. RCW 4.84.010. The result is that the trial court acted within its authority when it denied reasonable attorney's fees to both sides.

Affirmed.

PETRICH, A.C.J., and ALEXANDER, J., concur.

Review granted at 117 Wn.2d 1001 (1991).