[No. 58260-2.   En Banc.   March 5, 1992.]

KERRY R. CLARK, *Petitioner*, v. RICK LUEPKE, ET AL, *Respondents*.

---

578

*Anthony J. Lowe,* for petitioner.

*Ronald W. Greenen* and *Greenen & Sebby,* for respondents.

DURHAM, J. — The Automotive Repair Act (ARA), RCW 46.71, was significantly amended in 1982 in an effort to create a more equitable balance between the interests of mechanics[1] and consumers. *See* Laws of 1982, ch. 62. This case examines the effect of those amendments on a mechanic's right to be paid for duly performed vehicle repairs, despite violations of the ARA's consumer protection

---

[1]Except where directly quoting the ARA, this opinion will use the gender-neutral term "mechanic" rather than "repairman". *See also* RCW 44.04.210 (use of gender-neutral terms in statutory language).

provisions. Both the Superior Court and Court of Appeals held that violations of the act do not preclude payment for repairs. *Clark v. Luepke*, 60 Wn. App. 848, 809 P.2d 752 (1991). We affirm.

Kerry Clark is the owner of a 1978 Jeep CJ-5 with a high performance engine. The engine was remanufactured and installed by an Oregon company, which sold Clark a limited warranty on the engine. After moving to Washington, the engine seized up, requiring extensive repairs. On August 22, 1985, Clark took the vehicle to Rick Luepke for repairs. Luepke had extensive knowledge of engines, having repaired over 1,500 during his career.

As found by the trial court, the necessary repair work for the high performance engine was not routine, but exceptional. Due to its exceptional nature, it was necessary to "tear down" the engine before Luepke could give an estimate for the repairs. The trial court also found that "Clark did not request a written estimate as he understood that the dismantling and rebuilding of his engine, which had been previously modified, would be difficult to do." Revised Memorandum Opinion, at 1; Clerk's Papers, at 39. Clark gave Luepke oral authorization to proceed with the repair work. Luepke never gave Clark a written estimate or choice of estimate alternatives.

At the time of their initial contact, Clark informed Luepke that most of the repair work would be covered by the extended warranty insurance policy. Luepke spoke to Clark's insurance company several times regarding the engine's repair. Clark claims that the insurance company did not authorize Luepke to complete the entire job, but only to tear down the engine in order to make a repair estimate. Luepke argues that the insurance company told him not to contact it until he had the total price of the repairs which he could only provide upon completion of the job. The trial court's finding that Clark authorized the repair job supports Luepke's version. Moreover, the trial court found that Luepke did not agree "to act as a collection

agent for Plaintiff in regards to the insurance company coverage." Findings of fact, at 2; Clerk's Papers, at 42.

Luepke completed the work without undue delay, at a cost of $2,764. Following the insurance company's refusal to pay, Luepke presented Clark with a bill the trial court found to be neither unreasonable nor excessive. Clark never objected to the amount of the repair bill. Eventually, Clark settled with his insurance company for $1,000. Clark presented no evidence suggesting the reasons behind the low settlement amount, and the trial court noted considerable skepticism regarding the scope of coverage under the insurance policy.

Clark could not pay the bill immediately, so Luepke kept the Jeep CJ-5 despite Clark's protests, until the bill was paid in full. During this 6-week period, Luepke allowed Clark to drive the jeep if another vehicle was left in its place. Clark presented no other evidence that he was damaged by Luepke's assertion of a mechanic's lien.

Clark filed suit in Clark County Superior Court on July 31, 1986. After an arbitrator heard the case, Luepke requested a trial de novo before the Superior Court.

Following a bench trial, Judge John N. Skimas found several violations of the ARA. First, Luepke did not post a sign informing Clark of his rights under the ARA. Second, Luepke did not offer Clark a choice of estimate alternatives as set out in RCW 46.71.040. Finally, the assertion of a mechanic's lien violated the act because Luepke did not provide Clark with a written price estimate. Despite these violations, however, the trial court held that "[a]fter 1982 the consequences for not providing a written estimate or obtaining consent to one of the alternatives in RCW 46.71.040 is the repairman loses the right to claim a possessory lien but not his claim for services." Revised Memorandum Opinion, at 2; Clerk's Papers, at 40.

The Court of Appeals upheld the trial court's decision in *Clark v. Luepke*, 60 Wn. App. 848, 809 P.2d 752 (1991). It

found that the 1982 amendments to the ARA "restored to the repairman his or her common law right to recover for the reasonable value of work performed." *Clark*, at 854. Using a restitution analysis, the court found that Luepke's violations of the act "cast upon him the burden of proving that he was entitled to receive and retain payment for the work he performed". *Clark*, at 855. Because Luepke proved at trial that his work was reasonable, necessary, and justified, he satisfied this burden. *Clark*, at 855. We granted Clark's petition for review.

In its original form, the ARA required a mechanic to give a customer a written estimate for all repair work exceeding $50, regardless of the mechanic's desire to claim a lien against the repaired vehicle. Laws of 1977, 1st Ex. Sess., ch. 280, § 4, p. 967. For any work performed without a written estimate, the mechanic could not collect payment, even if the mechanic had offered an oral estimate, or if the customer had orally authorized the work. *Garth Parberry Equip. Repairs, Inc. v. James*, 101 Wn.2d 220, 223, 676 P.2d 470 (1984); *Webb v. Ray*, 38 Wn. App. 675, 678, 688 P.2d 534, *review denied*, 103 Wn.2d 1010 (1984); *I-5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 10, 11, 645 P.2d 716, *review denied*, 97 Wn.2d 1033 (1982).

■ The ARA, however, was substantially amended in 1982. Laws of 1982, ch. 62. As the Court of Appeals correctly noted:

> According to the plain language of these amendments, their purpose and effect was to remove the absolute prohibition set up in the original act, and to allow the automobile repairman to charge and collect for work performed and parts supplied, notwithstanding violations of the ARA, assuming of course that he or she was otherwise entitled to do so under general contract principles.

*Clark*, 60 Wn. App. at 854. A review of the 1982 amendments' legislative history confirms that the Legislature intended to mitigate the sometimes harsh effects of the

ARA against mechanics.[2] To use Judge Skimas' words, the ARA is no longer a "gotcha statute".

Under the new statutory scheme, a mechanic may collect for work performed without a written estimate so long as the customer authorized the work. Rather than requiring a written estimate for all work, the current version of the ARA requires a mechanic to provide a written estimate or a choice of estimate alternatives,[3] prior to the commencement of repairs, where (1) the price of repairs is estimated to exceed $75 and the mechanic chooses to assert a mechanic's lien, *or* (2) if the customer requests a written estimate. RCW 46.71.040; Laws of 1982, ch. 62, § 3, p. 340. The effect of this change is to narrow the circumstances under which a written estimate is necessary, and to tie the requirement of a written estimate to the assertion of a mechanic's lien. Any duty to provide a customer with a choice of estimate alter-

---

[2]For example, a February 26, 1981, bill report on House Bill 375 states that the "[h]arshness of law is offset by affording recovery to repairmen if the work is reasonable, necessary and justified." Other testimony and background material refer to the harshness of the old law, including a letter from the Automotive Service Councils of Washington, which states that "many unnecessary burdens have been placed on the honest repair facility, and in some cases, the current law can be used by the unscrupulous consumer as a tool to legally cheat the honest repair facility." Letter from Dan Flanagan to Senator J.T. Quigg (Feb. 16, 1982).

[3]The three possible estimate alternatives are established in specific statutory language:

"YOU ARE ENTITLED TO A WRITTEN PRICE ESTIMATE FOR THE REPAIRS YOU HAVE AUTHORIZED. YOU ARE ALSO ENTITLED TO REQUIRE THE REPAIRMAN TO OBTAIN YOUR ORAL OR WRITTEN AUTHORIZATION TO EXCEED THE WRITTEN PRICE ESTIMATE. YOUR SIGNATURE OR INITIALS WILL INDICATE YOUR SELECTION.

1. I request an estimate in writing before you begin repairs. Contact me if the price will exceed this estimate by more than ten percent.
_ _ _ _ _ _ _ _ _ _ _

2. Proceed with repairs but contact me if the price will exceed $_ _ _ _ _ _ .
_ _ _ _ _ _

3. I do not want a written estimate.
_ _ _ _ _ _ _ _ _ _ _ _" RCW 46.71.040(1).

natives is strictly limited to these circumstances. RCW 46.71.040(1).

Other new language added to the ARA in 1982 further enforces a mechanic's right to collect for duly performed repair work, despite the absence of a written estimate. According to RCW 46.71.047:

> If an automotive repairman is required by RCW 46.71.040 to provide the customer a written price estimate or a choice of estimate alternatives, the repairman is barred from recovering in an action to recover for automotive repairs any amount in excess of one hundred ten percent of the amount authorized by the customer unless the repairman proves by a preponderance of the evidence that his or her conduct was reasonable, necessary, and justified under the circumstances.

Thus, in order for a mechanic to collect payment when work is performed without a written estimate, the repair work must either have been (1) authorized by the customer, or (2) reasonable, necessary, and justified under the circumstances.

When a mechanic is authorized to perform repair work, RCW 46.71.047 allows the mechanic to recover up to 110 percent of the amounts authorized by the customer for repairs. Unlike other sections of the ARA, authorization may be either oral or written and need not be supported by a prior written estimate. Clark asserts that RCW 46.71.047 presupposes the existence of a written estimate, but fails to support this claim with any reasoning. Such a reading would render RCW 46.71.047 redundant by giving it the exact same meaning as the pre-existing language in RCW 46.71.040(2). Moreover, this reading would directly violate RCW 46.71.040(1) by making a written estimate a condition of payment, rather than a condition only for assertion of a valid lien.

■ Here, the trial court found that Clark authorized the repair work. Clark has not challenged this finding of fact and "[a]n unchallenged finding of fact is a verity on appeal." *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). Given this authorization, Luepke had a

right to be paid regardless of any other collateral violations of the ARA.

Although the Court of Appeals also reached this result, we disagree with its reliance upon the second part of RCW 46.71.047 which allows a mechanic to collect for unauthorized repairs where "his or her conduct was reasonable, necessary, and justified under the circumstances." The Court of Appeals read this provision very broadly, allowing a mechanic to recover whenever he or she can prove that the repairs were reasonable. Absent exceptional circumstances, however, it is never reasonable for a mechanic to fix a car without the authorization of the customer. Allowing the mechanic to do so would be a gross infringement on a customer's contractual freedom. Reading the statute in this manner would swallow the first part of RCW 46.71.047 which bars a mechanic's recovery, except for duly performed *authorized* repairs. The 1982 amendments do not skew the ARA to the point where customers are forced to pay unexpected bills so long as a mechanic can prove the "reasonableness" of the repairs.

As an alternative recovery theory, Clark argues that Luepke's violations of the ARA should prevent collection for the repair work because they also constitute a violation of the Consumer Protection Act (CPA), RCW 19.86. Under RCW 46.71.070:

> A violation of this chapter is an unfair act or practice in violation of the consumer protection act, chapter 19.86 RCW. In an action under chapter 19.86 RCW due to an automotive repairman's charging or attempt to charge a customer an amount in excess of one hundred ten percent of the amount authorized by the customer, a violation shall not be found if the automotive repairman proves by a preponderance of the evidence that his or her conduct was reasonable, necessary, and justified under the circumstances.

■ There is no doubt that Luepke violated the ARA by failing to post signs, offering no estimate alternatives, and asserting an illegal mechanic's lien. *See State v. Pike*, 118 Wn.2d 585, 826 P.2d 152 (1992). Nevertheless, the CPA does

not preclude Luepke's right to be paid for authorized repair work. As the Court of Appeals noted, "Clark did not seek to enjoin further violations of the Consumer Protection Act, nor did he prove or recover any actual damages." *Clark*, 60 Wn. App. at 856. Absent proof of injury for the ARA violations, Clark cannot maintain a private action for damages under the CPA based upon these violations. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). Here, the trial court specifically held that Clark failed to prove any damages.

The ARA no longer imposes the sanction of withholding payment for duly performed repair services upon mechanics who fail to comply with its provisions. Generally, if a mechanic fails to comply with the ARA by not providing a written estimate, then he or she may not assert a lien and might face damages under the CPA. Clark authorized the repairs, and failed to show any injuries flowing from Luepke's violation of the CPA. We therefore affirm the holding of the Court of Appeals and the trial court.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and JOHNSON, JJ., concur.