DECISION
Before this Court is Plaintiff Paul A. DeCesare's (DeCesare) motion for partial summary judgment and Defendant Lincoln Benefit Life Company's (Lincoln) cross-motion for summary judgment as to the class action claims. Opposing parties have timely filed objections to each respective motion.[1]
 Facts/Travel
Much of the underlying facts of this matter were set out by this Court in its April 3, 2002 decision granting the Plaintiff's motion for class certification. In 1997, Plaintiff DeCesare purchased an annuity policy from Defendant Lincoln, an insurance company offering its products to the public. DeCesare purchased a Saver's Index Annuity policy (Policy or Policies). Lincoln sells its Policies to customers throughout the United States through independent contractors. These agents are not employees of Lincoln.
The Policies are premium deferred annuity plans which provide monthly pay-outs to policy-holders. The pay-outs are calculated on the basis of the accumulated value of the initial premium with reference to the Standard and Poor's 500 Stock Index (SP Index). A certain percentage of the SP Index is applied yearly to the Policies, subject to a mandatory limit. The Policy indicates that Lincoln retains an annual right to both set the percentage of the SP Index applied to the Policies each year, known as the Index Participation Rate (Rate) and to declare the applicable limit or Cap to which the Policies are annually subject. The Policy provides that after the first contract year, the Rate will be:
 As declared in advance by us only on each contract anniversary thereafter, but not less than {60%} for contract years in the first term.
See Def's Mem. of Law Ex. 1. The Policy further provides that after the first contract year, the Cap will be:
 As declared in advance by us only on each contract anniversary thereafter, but not less than {10%} for contract years in the first term, and not less than 3% for contract years after the first term.
Id.
Pursuant to its right to set the annual Policy Rate and Cap, Lincoln made an internal decision for the 1998-1999 contract year to reduce the Rate and Cap from 80% and 14%, to 70% and 12% respectfully. Following its standard practice with regard to setting the annual Rate and Cap, Lincoln, through its Interest Rate Committee, assisted by its Actuarial Department, determined the annual Rate and Cap. Lincoln then announced the Rate and Cap internally via e-mail prior to the anniversary dates of the various Policies. The Policy required Lincoln to send policyholders a statement or status report regarding the Rate and Cap within 30 days after each Policy anniversary date. Specifically, several pages after the afore-mentioned "declaration" section, the Policy contains a provision detailing the requirement to notify annuitants of new Rate and Cap. The provision states:
 Annual Report — We will send you a report not later than 30 days after each contract anniversary that shows: the contract value, accumulated value, and surrender value at the beginning of that contract year; the amount of any withdrawals, credits and index increases during that contract year; the contract value; accumulated value; and surrender value at the end of that contract year and the index participation rate, cap and floor applicable to the new contract year.
Id.
Plaintiff Decesare is among a group of policyholders with Policy anniversary dates between February 7 and February 24, 1998. In February 1998, this group received annual Policy statements indicating that the annual Rate and Cap would be 80% and 14% respectfully. On March 3, 1998, however, these policyholders received amended Policy statements noticing them that there would in fact be a reduction in the applicable Rate and Cap from 80% and 14% to 70% and 12%. The new rates were stated within the amended Policy statements with nothing further referencing the changes or making policyholders aware of them. Lincoln made no additional attempt to indicate the Rate and Cap reductions to the policyholders.
Generally, when Lincoln issues various Policy statements to its policy-holders, it sends a copy of that statement to the policyholders' insurance agent as well. In this case, however, Lincoln did not send a copy of the amended Policy statement to DeCesare's insurance agent or to the insurance agents of any of the policyholders in the group mentioned above.
After learning of Lincoln's actions with respect to the Rate and Cap reductions, DeCesare commenced this action on April 21, 1999, on his own behalf and on behalf of all others similarly situated. On April 3, 2002 a class of plaintiffs was certified to pursue Claims I-III of the Complaint (Declaratory Judgment, Breach of Contract, and Breach of the Duty of Good Faith and Fair Dealing). The class consists of all persons who purchased Saver's Index Annuity I policies from the Lincoln Benefit Company during the period January 1, 1996 through December 31, 1997 and had contract anniversary dates during the period February 7, 1998 through February 24, 1998.
Plaintiff has timely filed a motion for partial summary judgment and the Defendant has timely filed a cross motion for summary judgment as to the class action claims. Specifically, both parties, as argued in their respective motions, are seeking summary judgment as to the claims for breach of contract, breach of the duty of good faith and fair dealing, and declaratory judgment. Both parties advance a singular, significant argument in support of their respective motions. This, however, is the proverbial fork in the road. The Plaintiff strenuously advocates one meaning of the term "declare", and the Defendant argues with equal fervor an altogether different meaning. This Court, then, must determine the meaning of the word "declare" as used in the relevant Lincoln Benefit Annuity policy (Policy).
Standard of Review
Super. R.Civ.P. 56 empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus in a proceeding for summary judgment, the court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonnanno v. Colmar Belting Co., Inc., 733 A.2d 712, 715 (R.I. 1999) (citing Textron, Inc. v. Aetna Casualty and Surety Co., 638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not merely rely upon mere allegations or denials in his or her pleadings. Small Business Loan Fund v. Loft, 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather, "[a] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers ofCranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v.Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
"To Declare" (or "Not To Declare")
The central argument posed by the Plaintiff is that Lincoln Benefit "declared" the policy interest Rate and Cap when it mailed annual policy statements to policyholders and is bound by that declaration. The Plaintiff argues that the word "declare" as used in the Policy requires an affirmative act by Lincoln Benefit sufficient to provide notice of the Annual Index Participation Rate and Cap. In support of this asserted definition, the Plaintiff refers the Court to two different dictionary definitions. First, Webster's Dictionary defines "declare" as "to make clear . . . to make known publicly, formally, or explicitly esp. by language . . . announce, proclaim, or publish" Webster's Third NewInternational Dictionary 586 (3rd ed. 1986). Second, Black's Law Dictionary defines "declare" as a "formal statement, proclamation, or announcement, esp. one embodied in an instrument" Black's Law Dictionary
415 (7th ed. 1999). The Plaintiff then explains that it was the practice of Lincoln to mail an annual policy statement to its policyholders that would set forth the Index Participation Rate and Cap for the upcoming year. In fact, the Plaintiff stresses, this annual mailing was the only
means by which Lincoln informed or notified anyone of the Rate and Cap. Accordingly, asserts the Plaintiff, since the Policy requires a declaration of the Rate and Cap, this annual mailing must have constituted such declaration, as it is the only act by Lincoln which would satisfy either dictionary definitions of the word "declare". Thus, argues the Plaintiff, Lincoln was bound to apply the rate set forth in the initial annual policy statements.
The Defendant, on the other hand, offers competing arguments as to the definition of "declare", maintaining that summary judgment should enter in favor of Lincoln. To begin with, the Defendant asserts, the relevant terms of the Policies are clear and unambiguous, and Lincoln complied with those terms. Specifically, the "declaration" provision of the Policy does not require Lincoln to declare the Rate and Cap to annuitants before their anniversary dates. The Defendant further explains that a separate Policy provision requires Lincoln to inform annuitants of the Rate and Cap after their anniversary dates, and Lincoln complied with this provision. Moreover, argues the Defendant, Lincoln is permitted to correct the error that occurred in the initial mailing with a timely second mailing. The Defendant also points out that the class members were not damaged as a result of the correction of this mistake, thus defeating any claim for breach of contract, as a necessary element is nonexistent.
It appears to this Court that both parties are in agreement as to the singular question before this Court; that is, what is the meaning of the term "declare"? It is equally clear to this Court that the parties are in direct opposition as to such meaning. At the outset, then, this Court finds that there is no genuine issue as to any material fact in existence in this matter, since the definitional determination is a question of law. Accordingly, summary judgment will enter. The remaining inquiry is in whose favor such judgment shall enter.
The Saver's Index Annuity Policy at issue in this case bestows upon Lincoln the absolute right to set the Index Participation Rate and Cap each year. In connection with this right, the Policy contains, among others, two separate provisions. First, the Policy requires that Lincoln declare the new Rate and Cap in advance, but only on each contract anniversary. Several pages subsequent to this provision, the Policy goes on to articulate the precise method by which annuitants are to be informed of this new Rate and Cap each year. In this provision, entitled "Annual Report", the Policy specifies that Lincoln will send annuitants a report within 30 days of each contract anniversary that contains information including the new Rate and Cap applicable to the coming year.
Notwithstanding the Plaintiff's reference to various dictionary definitions of the term "declare", this Court finds that Lincoln did in fact "declare" the new Rate and Cap when it circulated the same to internal personnel via email after making such determination. This Court is not persuaded that in order to "declare" the Rate and Cap as required by the Policy, Lincoln was required to "declare" the Rate and Cap toannuitants. Indeed, given the subsequent Policy provision detailing the manner in which annuitants would be notified, it would strain logic to an impermissible degree to conclude that the Policy drafters intended to insert one veiled requirement concerning notice to annuitants, followed by a second, subsequent and overt requirement as to the same notice. Rather, this Court finds that the provision requiring Lincoln to send a report to annuitants within 30 days of each contract anniversary was the single notice to annuitants required of Lincoln per the Policy. Accordingly, this Court is satisfied that Lincoln satisfied the requirement to "declare" when it determined the new Rate and Cap and circulated the same to all company employees.
From this conclusion flows a second finding of this Court; that is, Lincoln did not "declare" the Rate and Cap when it mailed annual policy statements to policyholders, since Lincoln had already "declared" the same by establishing and internally circulating the new Rate and Cap. Therefore, the argument of the Plaintiff that Lincoln is bound by the purported "declaration" in the mailing is without merit.
The Defendant maintains that the initial mailing of the annual policy statements to Plaintiffs in this matter contained a clerical error. Specifically, the Plaintiff initially received reports that contained the prior year's Rate and Cap of 80% and 14% rather than the new, lower Rate and Cap of 70% and 12% for 1998 that had been previously determined and declared by the Interest Rate Committee. The record indicates that Lincoln promptly discovered its error and corrected it during the first week of March 1998 by sending the class members annual reports that contained the correct rate and Cap of 70% and 12%. Lincoln also points out that these corrected reports were sent within 30 days of the anniversary dates, thereby complying with the Policy requirement.
It is the conclusion of this Court that Lincoln was permitted to correct the clerical error that caused the initial mailing to contain the inaccurate Rate and Cap. Nebraska law provides that "one who transfers money to another under a mistake of fact may recover such overpayments if the payments were involuntary and resulted in unjust enrichment of the party receiving the payment." Wendell's Inc. v. Malmkar, 405 N.W.2d 562, 568 (Neb. 1987). In this regard, the Malmkar Court noted that accidental payments qualify as involuntary. The Nebraska Supreme Court addressed this issue with particularity to insurance policies in holding that an insurer may recover a payment made under a mistake of fact that the insurance policy at issue required the payment." Chalupa v. Hartford Fire Ins. Co.,350 N.W.2d 541, 544 (Neb. 1984).
In the instant matter, Lincoln mailed reports containing a higher Rate and Cap than had been declared. Before payments were made, Lincoln discovered and corrected the error. According to the controlling principles of Nebraska law, Lincoln would have been entitled to recover overpayments if the mistake had not been discovered before payments were made. Therefore, this Court concludes that under Nebraska law, Lincoln must be permitted to correct the mistake, so as to avoid unnecessary overpayments and subsequent recovery.
Because this Court finds that the term "declare" is clear and unambiguous, there is no need to address arguments of both parties regarding contract interpretation as it pertains to ambiguous terms.
Conclusion
Summary judgment will be granted when this Court finds that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, as well as a review of the other materials properly before this Court, this Court finds there to be no genuine issues of material fact. Accordingly, summary judgment shall enter in favor of the Defendant. Summary judgment shall be denied as to the motion by the Plaintiff.
Counsel shall submit an appropriate order and judgment for entry.
[1] This action was initially brought by both Paul A DeCesare and Assunta Iaciofano. On November 23, 2001 Plaintiffs and Defendant filed with this Court a stipulation voluntarily dismissing the claims of Assunta Iaciofano with prejudice.